WHITNEY HARDWARE COMPANY v. E. K. McMAHAN ET AL.

No. 2987.   Decided May 25, 1921.

(231 S. W., 694.)

1.—Married Woman—Liability for Tort.

A married woman must respond in damages for a tortious act committed by her personally, and this though it was committed in attempted performance of a contract, whether one binding on her or not. (P. 244).

2.—Married Woman—Contract—Statute.

The Act of March 21, 1913, Laws, 33d Leg., p. 61, the history of its enactment, and the changes thereby introduced in the property rights and contractual powers of married women are examined and stated. (Pp. 244, 245).

3.—Statutory Construction—Implied Powers.

Every statute carries with it so much of collateral right and remedy as will make its provisions effectual; thus the Act (March 21, 1913) conferring on married women the exclusive management and control of their separate property invested them with power to contract with reference thereto (P. 245).

4.—Same—Married Woman—Statute—Contract.

Though the Act of March 21, 1913, eliminated the provision in the former law (Act of March 13, 1848) by which a married woman, incompetent by the common law to enter into a contract, was empowered to incur obligations for expenses for the benefit of her separate property (Red River Nat'l Bank v. Ferguson, 109 Texas, 287) and conferred on her no general power to contract, yet such Act, by giving to her "the sole management, control and disposition of her separate property, both real and personal," conferred on her so much of power to contract with reference to such property as would make its provisions effective, such as the right to make a binding rental contract of a store building owned by her and to make engagements for the repair or betterment of the premises. (Pp. 244-246).

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Hill County.

The Whitney Hardware Company appealed from a judgment sustaining a general demurrer to its petition seeking recovery against Mrs. McMahan and others. The opinion of the Court of Civil Appeals reversed and remanded the case; but on account of the doubt raised by the opinion in Red River Natl. Bank v. Ferguson, 109 Texas, 287, certified the question to the Supreme Court.

*Wear & Frazier,* for appellant.

The Court erred in sustaining defendant's general demurrer contained in its third amended original answer; for that the pleadings of the plaintiff clearly and succinctly alleged a cause of action against each of the defendants, which should have been heard and determined by the Court. As to sufficiency of pleading of plaintiff, to support a cause of action: Lynch v. Ortlieb, 28 S. W., 1017; Lovejoy v. Townsend, 61 S. W., 331; Dalkowitz Bros. v. Schreiner, 110 S. W., 564. Generally, to show liability of the wife. Art. 4621 Texas Civil Statutes; Speer's Law of Marital Rights in Texas, 266, Sec. 166-171; Harris v. Williams, 44 Texas, 124.

*R. M. Vaughan* and *F. V. Lowrey,* for appellees:

The court did not err in sustaining appellees' general demurrer because the allegations contained in said petition as to the appellee Mrs. Effie McMahan, are not sufficient to show that she, a married woman, is liable as to her separate property, or subject to personal judgment for any amount to be recovered against her by appellants.

Article 4624, Civ. Statutes, 1914, as amended Acts 1913, page 61.

The following decisions were rendered under original Article 4624 Revised Statutes 1911, but we think the principle announced applicable to said Article as amended by Acts 1913, page 61. Flannery v. Chidgey, 33 Texas Civ. App., 638, 77 S. W., 1035; Taylor v. Thomas, 145 S. W., 1061; Lemons v. Biddy, 149 S. W., 1065; Noel v. Clark, 25 Texas Civ. App., 136, 60 S. W., 356.

We refer the court to the following decisions based on article 4622 as amended by acts 33rd. Legislature, Chapter 32: Scott v. Scott, 170 S. W., 273; Winkie v. Conatser, 171 S. W., 1017; Tannehill v. Tannehill, 171 S. W., 1050.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The Whitney Hardware Company, appellant, sued Mrs. Effie McMahan, her husband E. K. McMahan, and her brother-in-law Waul McMahan, appellees, to recover damages in the sum of $2500.

The petition alleged that appellant was a corporation engaged in business as a retail merchant, owning a stock of hardware in a brick building belonging to appellee Mrs. Effie McMahan as her separate property and rented by her to appellant; that the building got out of repair to such an extent as to be untenantable; that thereupon Mrs. McMahan, acting individually and by agent, on or about August 1, 1915, contracted with appellant to put the building in a good tenantable state; that instead of properly repairing the building in compliance with her contract, the appellees, each acting as an individual and as agent for the others, duly authorized, negligently removed, without the knowledge of appellant, a part of the roof of the building

and failed to restore same until after a heavy rain, and that as the proximate result of the removal of the roof and of the failure to restore it, appellant's stock was damaged in the sum for which a recovery was sought.

The Court of Civil Appeals certifies to us the question:

Does plaintiff's petition state a good cause of action against Mrs. Effie McMahan, a married woman, or was it subject to a general demurrer?

Under the averment that Mrs. McMahan in person carelessly removed and failed to restore a part of the roof of the building, proximately causing damage from rain to appellant's stock of hardware she would be liable for a tort, independent of her capacity to contract for repairs, and independent of her liability for an act or omission of agents. For a tortious wrong a married woman must respond in damages, though the wrong be committed in an attempt to perform a contract, whether binding or not on the married woman. 26 R. C. L., 758; Stock v. Boston, 149 Mass., 414, 21 N. E., 871.

Our statutes dealing with the rights of husband and wife have been uniformly construed as leaving the wife, as well as the husband, liable for the torts of the wife. McQueen v. Fulgham, 27 Texas, 464; Crawford v. Doggett, 82 Texas, 140, 27 Am. St., 859, 17 S. W., 929.

At common law the wife had no capacity to enter into a contract. The statutes creating and safeguarding her separate estate gave her no general power to contract. Kavanaugh v. Brown, 1 Texas, 484. The act of March 13, 1848 empowered her to contract debts for necessaries furnished herself and children and for expenses to benefit her separate property. Prior to 1913 there was no other statutory grant of power to the wife to bind herself personally by contract. The Act of 1913 eliminated the express grant of capacity to incur obligations for expenses for the benefit of her separate property. The Act contained words which seem to have continued the wife's statutory obligation for necessaries furnished herself and children.

The history of the 1913 Act repels the conclusion that it authorized the wife to contract as if free from disability, except when expressly forbidden. Both houses passed the Act when it did confer such authority. Because of the Governor's objections to the policy of giving the wife so wide a contractual capacity, the bill was recalled from his office; and the manifest purpose of the radical change in the terms of the Act was to diminish the power to contract which the wife would have had under the bill on its prior passage. Red River National Bank v. Ferguson, 109 Texas 293, 206 S. W., 923.

As enacted, instead of conferring on the wife the capacity to make all contracts not specially inhibited, the Act enlarged her rights and powers: first, by giving to her "the sole management, control and disposition of her separate property both real and personal," subject to provisos as to the encumbrance, conveyance or transfer of certain

property; second, by placing the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stock owned by her under the control, management and disposition of the wife alone, subject to restrictions on encumbrances and transfers; and third, by providing that the specific items of community property confided generally to the wife's control and management, as well as her separate property, should not be subject to the payment of debts contracted by the husband. The Act also declared bank deposits to be presumptively the separate property of the party in whose name they stood in the dealings of banks in honoring checks and orders on such deposits. The Act relieved all community property, except the personal earnings of the wife and the income, rents and revenues from her separate property, along with the husband's separate property, from being subjected to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children, and, in the same connection, forbade the wife from being joint maker of a note or surety on any obligation without the joinder of her husband.

As clearly stated by Mr. Bishop. "Every statute carries with it so much of collateral right and remedy as will make its provisions effectual; or, as Lord Coke expresses it, 'when the law granteth any thing to any one that also is granted without which the thing cannot be.'" 2 Bishop on Law of Married Women, sec 21. As incidents to the wife's power of exclusive management and control of her separate property and of the specified portions of the community, she became invested with all such contractual power relative to same, as is requisite to make her power effectual.

The right to control and manage a store building or an improved farm, and to receive the rents, would be or would soon become valueless if the holder of the right were denied the power to make a binding rental contract and the power to make engagements for repairs or betterments.

The Supreme Court of Illinois decided that an action would lie against a married woman for work done in the improvement and cultivation of her farm, under a statute authorizing her to take the title to real estate free from the husband's control and interference, during coverture, and to possess and enjoy it as if she were unmarried. In the course of an instructive discussion the court said: "For, how can she possess and enjoy a separate estate which is made subject to her sole control, the same as though she were unmarried, unless she can put it to the same uses that an unmarried woman might? An unmarried woman has the same legal capacity, the same right of control over her own property, if of full age, as a man may have. . . . In Mitchell v. Carpenter, 50 Ill., 470, the court said: 'It may be said that a married woman can not adequately enjoy her separate property unless she can make contracts in regard to it. This is

true, and hence her power to make contracts so far as may be necessary for the use and enjoyment of her property, must be regarded as resulting by implication from the statute. If she owns houses, she must be permitted to contract for their repair or rental. If she owns a farm, she must be permitted to bargain for its cultivation and to dispose of its products.'" Cookson v. Toole, 59 Ill., 520, 521.

The Supreme Court of Maine held that the statutory right of a married woman to ''manage'' real estate included the power to submit to arbitration a question of damage thereto. In so holding, the court said: ''To *manage* property is (vide Webster's Dict.) to conduct the concerns of it; and the power to manage it must of necessity include the power to make valid contracts respecting it, by means of which she could acquire rights against those dealing with her in relation to it..'' Duren v. Getchell, 55 Me., 248.

In Frecking v. Rolland, the New York Court of Appeals said: ''The statute of March 2, 1860, 'Concerning the rights and liabilities of married women,' provides that a married woman may carry on any trade or business and perform any labor or services on her sole and separate account, and that the earnings therefrom shall be her sole and separate property. The power of a married woman to make contracts relating to her separate business is incident to the power to conduct it. It cannot be supposed that the legislature, while conferring the power upon a married woman to enter into trade or business on her own account, intended that her common law disability to bind herself by contract should continue as to contracts made in carrying on the business in which she was permitted to engage. The power to engage in business would be a barren and useless one disconnected with the right to conduct it in the way and by the means usually employed.'' 53 N. Y. 425.

The power granted by the statute to Mrs. McMahan to manage and control the store building, belonging to her separate estate, and the rents to be derived therefrom, carried with it the incidental and collateral power to make a contract with her tenant to repair the store building and to employ others to make needed repairs. She would be liable for the breach of her contract and for the proximate results of negligence on the part of those employed by her, without protection from her coverture.

We answer to the question certified that plaintiff's petition was not subject to a general demurrer in behalf of Mrs. McMahan.