MRS. ANNIE HAWKINS V. BRITTON STATE BANK.

No. 5933. Decided July 19, 1932.
(52 S. W., 2d Series, 243.)

*R. A. Kilpatrick,* of Cleburne, for appellant.

At the time of the alleged sale of the hay it was not matured and not ready for harvesting and was still part of the real estate which was the separate property of the plaintiff, and could not be disposed of by her husband. R. S., 1925, Art. 4614; Speer's Marital Rights in Texas, sec. 355, p. 345; 50 C. J., p. 749, sec. 21; Texas, etc. Ry. Co. v. Tippett, 2 Texas App. Civ. Cas., sec. 807; Teague v. Burk, 3 S. W. (2d) 461; Texas Lumber Co. v. First Natl. Bank, 209 S. W., 813; Arnold v. Leonard, 114 Texas, 535, 273 S. W., 799.

*McCart, Curtis & McCart,* of Fort Worth, for appellee.

The machinery was purchased with the rents from appellant's land and was community property, and appellant's husband had the right to sell the same to the bank. R. S., 1925, Art. 6414; Emerson Imp. Co. v. Brothers, 194 S. W., 608; Armstrong v. Turbeville, 216 S. W., 1101; Gohlman v. Whittle, 114 Texas, 548, 273 S. W., 808; Willis v. Moore, 59 Texas, 628; Silberberg v. Trilling, 18 S. W., 591; Kreisle v. Wilson, 148 S. W., 1132; Speer's Marital Rights in Texas, 3rd ed., sec. 363.

MR. JUDGE CRITZ delivered the opinion of Commission of Appeals, Section A.

This case is before us on certified questions from the Court of Civil Appeals at Fort Worth. The certificate makes a very excellent statement of the facts and issues involved. It is as follows:

"This case originated in the County Court of Tarrant County. Mrs. Annie Hawkins sued the Britton State Bank and the President thereof, W. W. Seaton. She alleged that she was the owner of 222 acres of land in Ellis County, belonging to her separate estate, and she sued for the value of certain hay harvesting machinery, towit:

"(a)   An International Harvester Hay Press____$200.00
"(b)   A Deering mower _____ 100.00
"(c)   A Sulkey Rake _____ 50.00
"(d)   A Buck Rake _____ 50.00

"She alleged that she had purchased these articles out of her separate estate, and that her former husband, M. D. Hawkins, without her knowledge or consent, made some kind of a trade with said Britton State Bank, whereby said bank took possession of said property and was still in possession of the same. She made the same character of allegations as to W. W. Seaton, but as defendant Seaton was dismissed by the lower court and the cause was prosecuted against the Britton State Bank alone, it will not be necessary to notice Seaton's connection with the transaction further.

"She further alleged that the defendant, through a receiver appointed by the court, had gone on her land and had cut and converted to its own use said hay and had taken from said land some fifty or sixty tons of said hay. That said hay grew naturally, without aid of planting or cultivation. The evidence tends to show that it was Johnson Grass. She alleged that the defendant converted to its own use 48½ tons of said hay and that the reasonable market value of the same was $10.00 per ton, and as to this item of damages she claimed the sum of $485, besides interest.

"On March 13, 1930, the defendant answered by a general demurrer and a general denial and specially pleaded that on April 16, 1929, for a good and valuable consideration, M. D. Hawkins, the then husband of plaintiff, conveyed by bill of sale of said date to defendant, W. W. Seaton, for the use and benefit of defendant Britton State Bank, the property for which plaintiff sued, including the hay press, the Deering mower, and the two rakes. That the entire hay crop for 1929 upon the 65 acres of the farm known as the Hill farm, belonging to plaintiff, was of the reasonable value of $189.90. That the defendant knew

the said M. D. Hawkins and plaintiff were husband and wife, and believed that said property was the separate or community property of said M. D. Hawkins, and bought said rakes and the other implements, relying on such belief or information. That the defendant did not at said time have any knowledge or notice of any purported claim of plaintiff that said property or any part thereof was her separate property or estate, but in fact said M. D. Hawkins exhibited a bill of sale showing that on May 26, 1921, said machinery had been conveyed to M. D. Hawkins by the Midlothian Mercantile Company. The bank prayed for the recovery of the above described machinery and the hay and for costs of suit.

"The court, after the evidence had all been introduced, peremptorily instructed the jury to find for defendant on its cross action for the machinery, grass or hay, and from the judgment in accordance with said instructed verdict, the plaintiff has appealed to this court.

"On April 18, 1931, this court handed down an opinion, in which it held that the evidence showed that the hay was produced upon the separate property of the wife and belonged to her separate estate. It further held that under the holding in Arnold, Adm. v. Leonard, 114 Texas, 535, that the rents and revenues derived from the wife's separate real estate belong to the community estate of the husband, and that he had the right to dispose of or sell the implements bought with such rents and revenues. That as to this conclusion by the trial court, this court held that the trial court did not err in peremptorily instructing a verdict for the defendant.

"As to the hay cut on plaintiff's land belonging to her separate estate, and inasmuch as the hay was contracted to be sold in April, and it was cut in August, 1930, that in its immature state such hay was part of the land, the separate property of the plaintiff below. We remanded the case to the trial court in order for that court to determine the value of the hay so cut, but affirmed the judgment as to the haying implements.

"Both the appellant and appellee have filed vigorous motions for rehearing, and it seems to us that said motions present probably a conflict in the holdings of the Courts of Civil Appeals, and have produced in the minds of some of us doubt as to whether or not our former holding was correct.

"Therefore we think it advisable to submit to your Honors certain questions for determination:

"1.  Did the trial court and this court err in deciding that the haying implements, purchased out of rents accruing from

the separate estate of Mrs. Hawkins, was community property and subject to sale by M. D. Hawkins, the husband, in order to pay the debt he had contracted to the bank? With regard to this question, we refer to the following authorities: Speer's Law of Marital Rights in Texas, 2nd Ed., p. 177; Emerson-Brantingham Implement Co. v. Brothers, 194 S. W., 608, by the Amarillo Court of Civil Appeals; Spencer et al. v. Pettit et al., 2 S. W. (2d) 422, by the Commission of Appeals; the same case in 17 S. W. (2d) 1102, by the Amarillo Court of Civil Appeals. See Art. 4616, 1925.

"2. Did this court err in holding that the husband of the plaintiff below had no authority to sell the immature grass on his wife's land, a part of her separate estate, in order to pay the debt he had contracted to the bank, and is this decision in conflict with the holding in Kreisle v. Wilson, 148 S. W., 1132, by the San Antonio Court of Civil Appeals?"

OPINION.

Correct answers to the questions certified involve, to some extent, a review of the history of our legislation with regards to the property rights of the wife, and her right to manage and control her separate property, together with its rents and revenues.

■ Under the 1911 codification of our Civil Statutes, and prior thereto, the husband had the sole management and control of the wife's separate property. Art. 4621, R. C. S., 1911. Also under the 1911 codification, and prior thereto, the rents and revenues from the wife's separate lands were community property, under the exclusive control of the husband, and could be subjected to the payment of debts contracted by the husband just the same as any other community property. It was also the law that during coverture the husband had full and exclusive disposition of all community property, only the homestead could not be sold or leased, except for a limited period, without the consent of the wife given in the manner required by law.

■ By the Act of 1913, General Laws Regular Session, 33rd Legislature, c. 32, p. 61, the rights of the wife as regards her separate property were materially changed and greatly enlarged. In such Act it was provided that "the wife shall have sole management, control and disposition of her separate property, both real and personal," etc. The Act further provided that "Neither the separate property of the wife, nor the rents

from the wife's separate real estate * * * shall be subject to the payments of debts contracted by the husband," etc.

The above provisions of the 1913 Act have been carried in all the various acts relating to the subject up to the present time, and now appear as Articles 4614 and 4616, R. C. S., 1925. Article 4614 has been amended by Act of the 41st Legislature, 1929, p. 66, c. 32. The amendment, however, merely eliminates from the article the words "and the rents and revenues derived therefrom, the interest on bonds and notes belonging to her and dividends on stocks owned by her," after the words "thus acquired" in Article 4614 of the 1925 codification. In other words Article 4614 attempted to make the things eliminated by the Act of the 41st Legislature the separate property of the wife in violation of Section 15 of Article 16 of our State Constitution. Arnold v. Leonard, 114 Texas, 535, 273 S. W., 799.

From what we have said it appears that at all times here involved Mrs. Hawkins was vested by law with the sole management of her separate land. Article 4614, R. C. S., 1925, as amended. Also at all times here involved the rents of Mrs. Hawkins' land was not subject to the debts contracted by the husband. Article 4616, R. C. S., 1925.

As already decided by the Supreme Court, the rents from the wife's separate lands are community property, that is, they belong to the community estate, but they cannot be subjected by execution to the payment of debts contracted by the husband. Arnold v. Leonard, supra.

As we understand this case the bank contends that since the rents from the wife's separate lands are community property the husband has the absolute right to convey them in payment of community debts contracted by him, or for any other valid consideration. We think such a holding would amount to a nullification of the provisions of Article 4614.

The statute last mentioned, in clear and unmistakable language, vests the wife with exclusive management and control of her separate land. This right certainly includes the right to the sole management and control of the rents derived therefrom. Emerson-Brantingham, etc. v. Brothers, 194 S. W., 608. It would be idle to say that the statute intends to confer on the wife the bare right to control and manage the land itself, but that the minute the rents she has contracted for come due, or the minute such rents are collected, the husband can take charge thereof, and use them to suit herself, all without the wife's consent and against her will. Such a holding would saddle the wife with all the burdens incident to the management of her

estate but rob her of all benefits, and render the statute but an idle and a vain thing.

When we read Article 4614, defining the wife's rights as regards her separate property, in conjunction with Article 4613, defining the husband's rights as regards his separate property, it becomes plainly evident that in so far as the ordinary control or management is concerned the respective rights of the spouses are, by statute, made equal. Speer's Law of Marital Rights in Texas, p. 486.

From what we have said above it is evident that we hold that under the provisions of the 1913 Act, supra, and all subsequent valid acts, the rents from the wife's separate lands are community property, that is, they belong to the community estate, but they are under the exclusive management and control of the wife and cannot be subjected to the payment of debts contracted by the husband, either by execution or otherwise, without the wife's consent. We think this, in fact, is the holding in Arnold v. Leonard, supra. We quote the following from Judge Greenwood's opinion in that case:

"There can be no doubt that the act of 1913 left the rents and revenues of the wife's separate lands assets of the community estate. Red River Natl. Bank v. Ferguson, 109 Texas, 290, 206 S. W., 923; Whitney Hardware Co. v. McMahan, 111 Texas, 245, 231 S. W., 694; Scott v. Scott (Texas Civ. App.), 170 S. W., 273; Tannehill v. Tannehill (Texas Civ. App.), 171 S. W., 1051. Nor can there be any doubt that the act of 1913 and the subsequent acts intended to exempt rents of the wife's separate lands from payment of a community debt contracted by the husband. The provision of the acts of 1917 and 1921, declaring the exemption, is separate and distinct from the portions of the acts undertaking to change the ownership of rents and revenues from the wife's separate lands. Hence such provision might be operative in each act, despite failure of the purpose to make the rents separate property of the wife. Western Union Tel. Co. v. State, 62 Texas, 633."

\* \* \* \*

"The sum of our conclusions is: The Legislature, in defining the wife's rights in and to her separate property and property held in common with her husband, could lawfully deprive the husband of the power granted him for many years to manage and control the wife's separate property and portions of the community property which were derived from use of the wife's separate property or from her personal exertions, and could confide the management, control, and disposition thereof to the

wife alone, and could exempt, not only her separate property, but said portions of the community from payment of the husband's debts. In making this grant of enlarged rights to the wife, and working the corresponding diminution in rights to be exercised by the husband, the Legislature was lawfully defining the wife's rights in both her separate estate and common property, as expressly authorized by the Constitution. But the Legislature could not divest the husband of all interest in and to property which, under the Constitution, was guaranteed either to the community or to the husband's separate estate, and use the same to enlarge the wife's separate estate beyond its constitutional limits."

■ We are aware of the fact that Article 4619, R. C. S., 1925, provides "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only." This provision was formerly carried as Article 4622 in the codification of 1911. In our opinion, this statute should not be given such a construction in the 1925 codification as to nullify the provisions of Articles 4614 and 4616 preceding it. We think that all these statutes should be harmonized, and be given effect if it is reasonably possible to do so. It has already been demonstrated that Article 4614 can not be given any practical effect if it should be held that the wife cannot exclusively control the rents from her separate lands. A reading of the two statutes discloses that when compared with each other, Article 4614 is special and Article 4619 general. It therefore follows that where the special provisions of Article 4614 conflict with the general provisions of Article 4619, the special provisions of Article 4614 operate as exceptions to the general provisions of Article 4619.

Of course the wife may consent for the husband to manage and control her separate land and the rents and revenues derived therefrom, and this consent may be either express or implied. Also the wife, may, by course of conduct, estop herself from asserting her statutory rights. Such matters usually involve issues of fact.

■ Finally all we have said applies with double force to the attempt of the husband to sell the hay growing on the wife's land before it was even matured. In order to effectuate such a sale, the purchaser, would necessarily have to go on the land and take charge of it in order to possess that which he bought. Such

a privilege would be utterly inconsistent with the wife's unquestioned statutory rights of exclusive possession, management and control.

We recommend that this opinion be certified as an answer to the questions propounded by the Court of Civil Appeals.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.