PEARL JUNE BEARDEN V. TROY RAY KNIGHT ET AL.

No. A-2460. Decided April 5, 1950.
Rehearing overruled May 3, 1950.
(228 S. W., 2d Series, 837.)

*McCarthy, Collins & Snodgrass* and *A. E. Aikman,* all of Amarillo, for petitioner.

The Court of Civil Appeals erred in holding that crops grown on petitioner's separate property during marriage were subject to the payment of debts contracted by her husband during marriage, and in entering judgment that the proceeds received from said crops, which had been deposited in court upon the original hearing of the divorce proceedings should be applied on said debt. Hawkins v. Britton State Bank, 122 Texas 69, 52 S. W. 2d 243; Gohlman Lester & Co. v. Whittle, 114 Texas 548, 273 S. W. 808; Teague v. Burke, 3 S. W. 2d 461.

*Cowsert & Bybee* and *Ray Cowsert,* all of Hereford, for respondent.

The Court of Civil Appeals correctly held that the crops grown on petitioner's separate property during her marriage to her husband were community property and subject to the payment of the community debts, and that said proceeds could properly be applied as a credit upon the judgment in favor of respondent bank, who held the note and mortgage executed by the husband against said crops. First National Bank of Lewisville v. Davis, 5 S. W. 2d 753; Sweet Water Cotton Oil Co. v. Birge-Forbes & Co., 160 S. W. 1125; Bradley v. Ramsey, 65 S. W. 1112.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

This cause in its beginning was a suit for divorce brought by petitioner, then Mrs. Pearl June Knight, against her husband, Troy Ray Knight. She sued for divorce and for injunction to restrain him from selling or encumbering her separate property or the community property. On September 28, 1948, the court ordered the issuance of a temporary injunction, restraining Troy Ray Knight from encumbering either the separate or the community property. On October 27, 1948, a decree of divorce was entered, adjuding further that a residence in the City of Lubbock and a 324 acre farm in Deaf Smith County were

the separate property of Mrs. Knight. Her maiden name, Pearl June Bearden, was restored to her.

Four days before the decree of divorce was entered, respondent Hereford State Bank filed a petition in intervention in the case, alleging that respondent Troy Ray Knight was indebted to it as evidenced by his promissory note for $4380.00 executed June 12, 1948, and past due, and further alleging that the note was secured by chattel mortgage executed October 13, 1948, by Troy Ray Knight on 250 acres of growing maize row crops, and 23 acres of hegari in bundles on "his farm" being the north half of Section 69, Block K-3 in Deaf Smith County; that the note represented a community debt and that the crops were community property subject to payment of the community debt. The land described in the chattel mortgage and on which the crops were grown was the separate property of petitioner.

On the day the decree of divorce was entered petitioner and respondent Hereford State Bank made a stipulation in substance that petitioner should continue to harvest the crops, that they should be stored, and that the proceeds should be held by her attorney "until the final adjudication of this case and subject to further order of the court". There was a trial without a jury in which petitioner and the bank participated, respondent Troy Ray Knight appearing only by entry of appearance, and on January 21, 1949, judgment was rendered in favor of Hereford State Bank against Troy Ray Knight for $5033.25, and ordering that petitioner's attorney pay to the bank, to be credited on the judgment, the sum of $2071.66 in his hands, being net proceeds of the sale of the crops. Judgment was also rendered against petitioner for $740.00 to be credited on the judgment against Troy Ray Knight. This judgment recites that at a prior date of the same term a judgment of divorce was granted to petitioner, and it contains findings that the indebtedness sued upon by the bank was a community indebtedness of petitioner and Troy Ray Knight and that the crops were community property and were subject to the payment of the debt.

The Court of Civil Appeals affirmed the judgment of the trial court after reforming it so as to eliminate that part of it which awarded the bank personal judgment for $740.00 against petitioner. 224 S. W. 2d 273.

■ The fact that this suit began as a suit for divorce suggests a question as to the jurisdiction of this Court. This, because of the provision of Article 1821 of the Revised Civil Statutes that the judgments of the courts of civil appeals shall be con-

clusive in "all cases of divorce" and the decisions of this Court that even though property rights are involved in a suit for divorce, and only the decision as to property rights is questioned on appeal or by bill of review, the cause is nevertheless a case of divorce in which the judgment of the Court of Civil Appeals is final, Kellett v. Kellett, 94 Texas 206, 59 S. W. 809; Burguieres v. Farrell, 126 Texas 209, 87 S. W. 2d 463; Lloyd v. Bonds, 147 Texas 523, 217 S. W. 2d 1000. The instant case, however, is ruled by Korn v. Korn, (Com. App.) 29 S. W. 2d 1075, which was distinguished and by implication approved in Burguieres v. Farrell, 126 Texas 209, 87 S. W. 2d 463. Under the decision in the Korn case, this Court has jurisdiction because the property right to be adjudicated herein, being the right asserted by the bank to subject to the payment of a community debt the crops grown on land separately owned by petitioner, is not incidental to or in any way dependent upon the granting or denial of a divorce, but could be adjudicated in a suit in which no divorce is sought.

The application for the writ contains but one point of error, which is that the Court of Civil Appeals erred in holding that crops grown on petitioner's separate property during marriage were subject to the payment of the debt to the respondent bank which was contracted by Troy Ray Knight while he was petitioner's husband.

■ In the argument under the point the further contention is made that the trial court's judgment should not have applied the proceeds of the crops to the satisfaction of the debt, because the mortgage of the crops given by Troy Ray Knight was obtained by the bank in violation of the court's injunction and with knowledge of the injunction order. In our opinion the stipulation made by petitioner and the bank, that petitioner should continue to harvest and store the crops and that the proceeds of them should be held by her attorney until the final decision of the case and subject to the further order of the court, removed from the case any question as to the validity of the mortgage. The effect of the stipulation was to substitute the proceeds of the crops held by the attorney for the crops, so that the proceeds could be subjected to the debt, that is, applied to its payment, in the event the court should determine that the crops were subject to the debt.

■ The one question for decision in the case is whether crops grown during marriage on land separately owned by the wife can be subjected to the payment of a debt contracted by the husband during the marriage. The Court of Civil Appeals, rest-

ing its decision primarily on First National Bank of Lewisville v. Davis, (Com. App.), 5 S. W. 2d 753, held that the crops were community property and that the proceeds of them are liable for the debt because crops are not specifically named in Article 4616 of the Revised Civil Statutes as property that is not subject to the payment of debts contracted by the husband. 224 S. W. 2d 273.

These facts are shown by the record: The note on which respondent bank sues was executed by the husband on June 12, 1948, in renewal of two notes that he had executed in 1947, all three notes having been given during the marriage. The record does not clearly show for what purpose the indebtedness evidenced by the notes was incurred. The trial court found that the debt was a community debt, and in the absence of that finding it would be assumed that it was. The land on which the crops were grown was the separate property of petitioner. The crops consisted of maize and hegari. When the mortgage on the crops was executed, October 13, 1948, the hegari was in bundles on the farm and the maize at that time had not been harvested, but was no longer drawing sustenance from the soil. The maize had been only partially harvested when the decree of divorce was entered on October 27, 1948. The trial court found that the crops were produced by the joint efforts of petitioner and her husband during their marriage and were produced "at least in part" with their community funds, and further found that the proceeds of the loan made by the bank to the husband were used in part for planting and cultivating the crops. These findings were attacked by petitioner in the Court of Civil Appeals. That court sustained in part the attack on the first of the two findings, stating that the testimony "does not reveal a great deal of work and labor expended upon the crops by the husband, but it does show that he participated to some extent therein". The evidence in the statement of facts shows that the crops were the result almost wholly of the labor and industry of petitioner, with the aid of a helper, most of whose compensation was paid out of the crops. The finding of the trial court that the proceeds of the loan made by the bank were used in part for planting and cultivating the crops was not discussed by the Court of Civil Appeals. Respondent bank has not pointed out in its brief any evidence to sustain that finding and we have found none. The only evidence bearing upon the question seems to be the testimony of petitioner that none of the money that her husband borrowed from the bank was used on the farm.

The foregoing facts and findings have been set out for a more complete explanation of the case. They are not of con-

trolling importance. The debt sued upon is a community debt. The crops considered as matured and severed from the soil were community property. They were not the separate property of the wife because they are not within the constitutional definition of the wife's separate property, which is that "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property." Article XVI, Section 15, Constitution of Texas. Arnold v. Leonard, 114 Texas 535, 273 S. W. 799. The debt for which respondent bank sues is a community debt, but it is a debt contracted by the husband. The crops are community property, but they were grown on the wife's separate land. And to restate the question to be decided, it is whether this special kind or class of community property, crops grown on land separately owned by the wife, is subject to, liable for, a debt contracted by the husband.

In our opinion the answer to the question is found in the construction placed on the applicable statutes by Arnold v. Leonard, 114 Texas 535, 273 S. W. 799, and Hawkins v. Britton State Bank, 122 Texas 69, 52 S. W. 2d 243, and in the reasoning of the opinions in those cases.

In Arnold v. Leonard the Court construed Articles 4621, 4622 and 4624 of the Revised Civil Statutes of 1911 as amended by the Act of 1913 (Acts Reg. Sess., 23rd Leg., Ch. 32), by the Act of 1917 (Acts Reg. Sess. 35th Leg., Ch. 194) and by the Act of 1921 (Acts Reg. Sess. 37th Leg., Ch. 130). Before the Act of 1913 the statutory definition of a wife's separate property was the same as the definition given in the Constitution, except that the words "as also the increase of all her lands thus acquired" were added in the statute, Article 4621, R. S. 1911. The same article prior to 1913 provided that during marriage the husband shall have the sole management and control of the wife's separate property. Article 4627 made the community property of the husband and wife liable "for their debts contracted during marriage".

The opinion, written by Chief Justice Phillips, in Red River National Bank v. Ferguson, 109 Texas 287, 206 S. W. 923, construing the Act of 1913, pointed out that its amendment of Article 4621 introduced a distinct change in the law in respect to control and management of the wife's separate estate, saying: "Whereas, under the former law its sole management was given to the husband, such management, together with its sole control and disposition is by the Act given to the wife, with the proviso that the husband's joinder shall be necessary to a conveyance

or encumbrance of her real estate and transfer of her stocks and bonds." Commenting upon the part of Article 4621 as amended by the Act of 1913, which provided that "neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds belonging to her, nor dividends on stocks owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband", the Court said: "It is thus declared, not only that the wife's separate property shall not be liable for the husband's debts, but, in addition, that *certain classes of community property* shall be entitled to the same exemption." (Emphasis added.)

The opinion in Red River National Bank v. Ferguson speaks of "the steady, unbroken policy of the laws of Texas to protect the property of the wife from the debts of the husband". And it emphasizes the fact that what had been a less liberal policy of the laws in respect to management of her property was changed by the Act of 1913, giving to her sole management, control and disposition, and by the significant provision of the Act exempting from liability for her husband's debts certain classes of community property. The same trend of liberality toward the right of the wife to manage and enjoy her separate property and her right to make contracts affecting that property is apparent in the Act of 1917 and the Act of 1921, and in Arnold v. Leonard, 114 Texas 535, 273 S. W. 799, Hawkins v. Britton State Bank, 122 Texas 69, 52 S. W. 2d 243, and in other decisions, for example: Whitney Hardware Co. v. McMahan, 111 Texas 242, 231 S. W. 694; Gohlman, Lester & Co. v. Whittle, 114 Texas 548, 273 S. W. 808; Cauble v. Beaver-Electra Refining Co., 115 Texas 1, 274 S. W. 120; Levin v. Jeffers, 122 Texas 83, 52 S. W. 2d 81, and Webb v. Webb, 148 Texas 405, 224 S. W. 2d 868.

By the Act of 1917 and the Act of 1921, Article 4621 of the 1911 statutes was amended to define the separate property of the wife as "all property, * *; both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired, *and the rents and revenues derived therefrom"*. (Emphasis added.) And that part of the amendment of 1913 was retained which exempted from liability for debts contracted by the husband the wife's separate property, the rents from her separate real estate, the interest on her bonds and notes, the dividends on her stocks and her personal earnings.

The certificate which submitted to the Court the question decided in Arnold v. Leonard, 114 Texas 535, 273 S. W. 799

stated that a judgment creditor of the husband was attempting to subject to the payment of the judgment certain rents *and revenues* from a number of pieces of real estate in the City of Galveston, all being the separate estate of the wife. The question certified in the case was: "Is the provision of the Acts of 1917 and 1921, that the rents *and revenues* derived from the wife's separate property shall be separate property of the wife, a valid provision in either of those statutes," (Emphasis added.) To this question the answer given in the opinion of the Court, written by Associate Justice Greenwood, after careful review of the provisions of the Constitutions of 1845 and 1876, and of the Acts of the Legislature, was: "So much of the Act of 1917 and of the Act of 1921 as undertook to declare the rents and revenues of the wife's separate realty to be her separate estate was violative of Section 15, of Article XVI, and of Section 35, of Article III of the Constitution, but that the provisions of said Acts, and of the prior Act of 1913, are valid, which render *the rents and revenues* of the wife's separate lands free from liability to forced sale for the payment of debts contracted by the husband." (Emphasis added.)

The decision that the two acts were in part invalid was based upon the conclusion that the people intended in adopting the Constitution to put the matter of the classes of property constituting the wife's separate estate beyond legislative control and that the Legislature can neither enlarge nor diminish that property as defined in the Constitution.

Article 4621 as amended by the Act of 1917 and the Act of 1921, after defining the separate property of the wife so as to include rents *and revenues* derived from her separate land, contains also the provision that the wife shall have the sole management, control and disposition of her separate property, both real and personal. The further provision in the same article as amended that exempts the wife's separate property and other property particularly named from liability for debts contracted by the husband does not use the word "revenues", but includes in the property particularly named as exempt "rents" from the wife's separate real estate.

The conclusion expressed in the opinion with respect to the parts of amended Article 4621 which give the wife the right of management, control and disposition of her separate property and also of portions of the community property and exempts the same from liability from her husband's debts is as follows:

"The sum of our conclusions is: the Legislature, in defining

the wife's rights in and to her separate property and property held in common with her husband, could lawfully deprive the husband of the power granted him for many years to manage and control the wife's separate property *and portions of the community which were derived from use of the wife's separate property* or from her personal exertions, and could confide the management, control, and disposition thereof to the wife alone, *and could exempt* not only her separate property but *said portions of the community from payment of the husband's debts."* (Emphasis added.)

It is apparent from this conclusion and from the Court's answer to the certified question which has been quoted herein, that the Court construed the amended article as exempting from liability for the husband's debts *rents and revenues* derived from the wife's separate land. If crops and the proceeds of crops grown on her land are not rents, they are undoubtedly revenues.

The Revised Civil Statutes of 1925 were compiled and adopted before Arnold v. Leonard was decided, but took effect after that decision. Article 4614 of the Revised Statutes of 1925 in defining the wife's separate property uses the same words, including "rents and revenues derived therefrom", as those contained in Article 4621 of the 1911 statutes as amended in 1917 and 1921, and adds as a part of the definition the words "the interest on bonds and notes belonging to her and dividends on stocks owned by her". The definition in Article 4614 is followed by the provision: "The wife shall have the sole management, control and disposition of her separate property, both real and personal." Thus the Legislature in the adoption of the Revised Civil Statutes of 1925 manifested its intention in explicit terms to give the wife the sole management, control and disposition of rents *and revenues* derived from her land, as did the prior Acts, and also of interest on her bonds and notes and dividends from her stocks. Article 4616 of the 1925 statutes, in the same language as that used in the amendments of Article 4621 of the 1911 statutes, exempts from the payment of debts contracted by her husband the wife's separate property, the rents from her separate real estate, interest on her bonds and notes, dividends from her stocks and her personal earnings.

Because of the decision in Arnold v. Leonard, Chapter 32, Acts of the Regular Session, Forty-first Legislature (1929) rewrote Article 4614 so as to omit from the definition of the wife's separate property the words "and the rents and revenues derived therefrom, the interest on bonds and notes belonging to her and dividends on stocks owned by her". And in order to

establish equal rights between the husband and the wife with respect to the rents and revenues derived from their respective estates, a like change was made in Article 4613 which defines the husband's separate property. That these were the purposes and the only purpose of the 1929 amendment is shown by the emergenecy clause of the Act. Articles 4613 and 4614 as amended in 1929 appear in Vernon's Annotated Civil Statutes. The result of the amendment thus made was to leave the statutes defining the rights of married women without express provision that they shall have sole management, control and disposition of that special class or kind of community property consisting of rents and revenues derived from their separate land, interest on their bonds and notes, etc.

When Hawkins v. Britton State Bank, 122 Texas 69, 52 S. W. 2d 243, was decided the Revised Civil Statutes of 1925, with the 1929 amendment of Articles 4613 and 4614, were in effect. The wife sued the bank for the value of hay harvesting implements and for the value of hay which had been sold by her husband to the bank in payment of a debt contracted by him. The implements had been bought with rents and revenues derived from the wife's separate real estate and the hay sold by the husband was growing on land belonging to her separate estate. Two questions were certified: the first, whether the implements purchased out of rents accruing from the wife's separate estate were subject to sale by the husband to pay the debt he had contracted to the bank; and the second, whether the husband had authority to sell the immature hay growing on the wife's separate land in order to pay the debt to the bank.

The opinion of the Court, written by Justice Critz when a member of the Commission but adopted by the Court, in discussing the question as to the authority of the husband to dispose of rents from the wife's separate land (and the implements bought with the rents) in payment of a community debt contracted by the husband, expresses the conclusion that the wife's right of exclusive management and control of her separate land given by the statute in clear and unmistakable language "includes the right to the sole management and control of the rents derived therefrom", and that a construction of the statute as conferring on her the bare right to control and manage the land itself, and as permitting the husband to take charge of the rents and use them to suit himself, "would saddle the wife with all the burdens incident to the management of the estate but rob her of all the benefits, and render the statute but an idle and a vain thing." The opinion thus states what the Court holds in answer to the first of the two certified questions:

"We hold that under the provisions of the 1913 Act, supra, and all subsequent valid acts, the rents from the wife's separate lands are community property, that is, they belong to the community estate, but they are under the exclusive management and control of the wife and cannot be subjected to the payment of debts contracted by the husband, either by execution or otherwise, without the wife's consent."

The opinion quotes at some length from Arnold v. Leonard, after stating that the holding above quoted is the same as the holding in that case. The further statement is made in the opinion that "Article 4614 cannot be given any practical effect if it should be held that the wife cannot exclusively control the rents from her separate lands". Another paragraph of the opinion, in referring to "rents and revenues" carries the implication that the wife has exclusive control of the revenues as well as the "rents" from her separate land.

The opinion in the Britton case contains only a brief discussion of the second of the certified questions, that as to the authority of the husband to sell the hay. The discussion is begun with this statement: "Finally, all we have said applies with double force to the attempt of the husband to sell the hay growing on the wife's land before it was even matured." The point is then made that the purchaser would necessarily have to go on the land in order to possess what he had bought and that "such a privilege would be utterly inconsistent with the wife's unquestioned statutory rights of exclusive possession, management and control".

In the two decisions, Arnold v. Lonard and Hawkins v. Britton State Bank, the Court has held that the statutes considered and construed in those cases (the present statutes in the Hawkins case) intended to give the wife sole management, control and disposition of rents and revenues arising from her separate land and of crops grown on her separate land and to exempt that property from liability for debts contracted by the husband. Crops were not in controversy in the Arnold-Leonard case but, as has been shown, the Court's decision and its answer to the question certified covered revenues as well as rents, classifying rents and revenues together as "portions of the community which were derived from the use of the wife's separate property". In the Hawkins case rents from the wife's separate land, implements bought with the rents, and crops grown on her land were involved. The decision that all of these were under the sole management, control and disposition of the wife and could not be disposed of by the husband in payment of debts contracted

by him and could not be subjected to the payment of those debts, either by execution or otherwise, without the wife's consent, was placed not so much upon the terms of Article 4616 expressly exempting rents and other property from the husband's debts, as upon the conclusion that the right of management, control and disposition of her separate land given to the wife by Article 4614 necessarily included, for her full enjoyment of the benefits conferred by that article, the right to sole management, control and disposition of rents and revenues derived from her land and crops grown on it. It is true that the crops had not matured when the husband undertook to sell them and that the opinion mentioned the fact that entry upon the land to sever the crops would be utterly inconsistent with the wife's rights of exclusive possession, management and control, but the opinion applies, "with double force", to the solution of the question as to the crops the same reason as that given for the decision as to the rents, that is, primarily that her rights to the crops is necessary to the full exercise and enjoyment of her sole right to her separate land.

■ While the word "rents", used in Article 4621 of the 1911 statutes as amended and in Article 4616 of the 1925 statutes, ordinarily means compensation received by the landowner for the use of the land by another, it has also the broader meaning of income, return or profits arising out of land. In Re Reel, 263 Pac. 248, 106 Atl. 227, 229; Thompson on Real Property, (Perm. Ed.) Vol. 1, p. 436, Sec. 275; 54 C. J. pp. 382-383. This may account in part for the holding in Arnold v. Leonard and in the Hawkins case that rents *and revenues* from the wife's separate land are exempt from liability for debts contracted by the husband. However, as shown by the foregoing discussion of the opinions in those cases and quotations from them, the holdings are based primarily uon necessary implication from the sole management, control and disposition of the land expressly given to the wife, and from the use of the words "rents and revenues" in other articles of the statutes. For example, Article 4623 of the 1925 statutes and Article 4624 of the 1911 statutes as amended in 1913 provide that neither the separate property of the husband nor the community property "other than the personal earnings of the wife and the income, rents and revenues from her separate property" shall be subject to the payment of debts contracted by the wife except those contracted for necessaries. The intention expressed in these articles of the statutes that the rents and revenues from the wife's separate real estate shall be liable for her valid contracts is consistent with the conclusion of the Arnold-Leonard case and the Hawkins case that the wife is given sole management, control and dispo-

sition of this class of community property and that it is exempt from liability for her husband's debts.

Arnold v. Leonard and Hawkins v. Britton State Bank have been discussed in several volumes of the Texas Law Review and in a very recent number of the Southwestern Law Journal. The most thorough of these discussions is in an article by Frank Bobbitt in Volume 4 of the Texas Law Review, pp. 154 to 169, and in an article by Wyndall R. Johnson and Robert W. Woolsey in Volume IV of the Southwestern Law Journal, pp. 88 to 100. The first of these two articles contains the statement that Arnold v. Leonard "clearly decides that one of these items, the rents and revenues of the wife's separate land, is not subject to the debts of the husband", and the further statement that "To deny the wife's power to contract to sell the growing crops on her land or to enjoy the actual benefit usually incident to title, such as securing suitable tenants, would in reality invalidate her *management and control of her separate property.*" The above cited recent article in the Southwestern Law Journal, after carefully reviewing "the leading case of Hawkins v. Britton State Bank", expresses the conclusion that as to rents *and revenues* from the wife's separate land, these rules are established by the authorities: they are subject to the control and disposition of the wife alone; they are not subject to the debts of the husband through levy by creditors or conveyance by the husband.

There is conflict between Hawkins v. Britton State Bank and First National Bank of Lewisville v. Davis, (Com. App.) 5 S. W. 2d 753, which held that cotton grown on the wife's separate land was subject to the husband's debts, because it did not fall within the class of property expressly exempted by Article 4621 of the 1911 statutes as amended, is not being "rents" received by her as compensation for use of her land by another. We follow the Hawkins case, rather than the Davis case, because it is the later of the two decisions and because it is supported by more convincing reasons.

In our opinion, the district court and the Court of Civil Appeals erred in holding that the crops on petitioner's land were subject to the payment of the debt to respondent bank contracted by her husband and in ordering that the sum of $2071.66, the proceeds of the sale of the crops, be paid to respondent bank.

That part of the judgment of the district court which orders the Honorable George McCarthy to pay to Hereford State Bank the sum of $2071.66 held by him as net proceeds of the sale of crops from petitioner's land and the judgment of the Court of

Civil Appeals, in so far as it affirms that part of the district court's judgment, are reversed and judgment is here rendered that respondent Hereford State Bank take nothing by its suit for the sum so held, and that said sum be paid to petitioner. In other respects the judgment of the Court of Civil Appeals is affirmed.

Opinion delivered April 5, 1950.

Rehearing overruled May 3, 1950.