Frank SCOFIELD, Collector of Internal Revenue for the First Collection District of Texas,

v.

D. E. BLACKBURN and Zola Blackburn.

No. 15046.

United States Court of Appeals Fifth Circuit.

Dec. 14, 1954.

I. Henry Kutz, Sp. Asst. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles F. Herring, U. S. Atty., San Antonio, Tex., for appellant.

Sam G. Winstead, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and ALLRED, District Judge.

**HUTCHESON, Chief Judge.**

Brought separately but consolidated for trial and appeal, the suits were for the refund of taxes overpaid by the community for the years 1945 and 1946 as a result of the erroneous assessment and collection from them of income which in law and in fact belonged to, and had been received by, their two children, Virginia Ogden and Bill R. Blackburn.

The claim was that the income in question had accrued to, and had been received by, Virginia and Bill as interest on, and gains from, the sale of the one-sixth interest owned by each in United States bonds which, under a written partnership agreement,[1] between David E. Blackburn and his three children, Virginia, David R. and Bill Blackburn, fixing the interest of each in the partnership and the securities bought and sold by it, had been traded in by them.

The answer, admitting the assessment and collection of the taxes and the filing of claims for refund, denied that the taxes were illegally collected and the truth of the facts claimed as the basis for their refund.

On the issues thus joined, the case was tried to the court without a jury, and the district judge, on evidence amply sustaining his findings, filed findings of fact[2] and conclusions of law[3] sustaining the taxpayer's contentions and entered judgment accordingly.

---

1. "The State of Texas (
County of Victoria (
"We, the undersigned, have entered into the following partnership agreement this 2nd day of January, A.D., 1945:

This agreement is entered into by and between D. E. Blackburn, David R. Blackburn, Mrs. Virginia Ogden and Bill R. Blackburn, and the respective interests of each partner shall be as follows:

|  |  |
|---|---|
| D. E. Blackburn | ½ |
| David R. Blackburn | ⅙ |
| Virginia Ogden | ⅙ |
| Bill R. Blackburn | ⅙ |

This partnership is created for the purpose of buying and selling stocks and bonds.

It is understood and agreed by each partner that D. E. Blackburn will borrow money from time to time for the purpose of buying stocks and bonds, and each partner hereto will be liable for his respective interest in any indebtedness created by D. E. Blackburn for the partnership, not to exceed $3,000,000.00 at any one time, and the proceeds are to be divided in proportion to each partner's interest herein. It is also understood and agreed that any losses incurred shall be borne by each partner in proportion to his interest herein.

Witness our hands this 2nd day of Jan., A.D. 1945."

2. These in substance were: (1) that the agreement was made as alleged; (2) The principal activities of the partnership covered a period beginning Jan. 6, 1945, and ending July 8, 1946, during which

Appealing from that judgment, the collector is here insisting that the findings and conclusions may not be sustained and that the judgment based on them may not stand. For the reasons hereinafter briefly stated and upon the authorities set out in note 3, supra, and Arnold v. Schepps, 5 Cir., 166 F.2d 821,

period the partnership made four separate purchases of U. S. Treasury Bonds and during the same period sold the bonds so purchased in five separate sales. The profit derived by the partnership from these transactions consisted of interest on the bonds and gain from the sale of such bonds. In the latter part of Dec., 1944 and prior to its formation, D. E. Blackburn and his three children discussed the formation of the partnership, and each of plaintiff's children understood his or her rights and responsibilities under the agreement. During the period here in question, each of plaintiff's children was more than 21 years of age. David R. Blackburn resided at Victoria, Texas, as did Mrs. Virginia Ogden. Dr. Bill R. Blackburn was in medical school at Houston, Texas, during a part of the period in question but occasionally returned home on visits. Each of the partners was advised periodically of the state of the operations of the partnership. Prior to 1944, Mrs. Virginia Ogden was married to Dr. U. B. Ogden. In August of that year she separated from him. At the time of their separation, Dr. and Mrs. Ogden had three minor children and their separation continued without reconciliation until Dec., 1946, when Mrs. Ogden divorced Dr. Ogden. No action in court was taken to remove the marital disabilities of Mrs. Ogden. During the period here in question, D. E. Blackburn and his wife, Zola Blackburn, had a combined community estate of the approximate net worth of $250,000. David R. Blackburn had a net estate of the approximate value of $60,000. Dr. Bill R. Blackburn had a net estate of the approximate value of $40,000, and Mrs. Virginia Ogden had a net estate of the approximate value of $40,000.

The loans made to finance the purchase of the U. S. Bonds here in question were made with the Republic National Bank of Dallas in the name of D. E. Blackburn, alone, and were evidenced by demand notes signed by him. During this period, U. S. Treasury Bonds of the type here in question were stabilized at par, due to the market support which the Federal Reserve Banks gave such bonds. For this reason, the risk of losses was minimized. During this period the Treasury Department, through various bond drives, sought to promote the sale of U. S. Treasury Bonds and many transactions were financed by banks in this area, whereby individuals purchased such bonds on little or no margin except the security of the bonds. The evidence establishes that while the risk of loss from the partnership transactions was minimized, such risk was taken into account by the partners and the agreement to share losses under the partnership agreement was a substantial consideration for the execution by each of the partners of the partnership agreement. During 1945 and 1946, the profits of the partnership were distributed to the partners in four separate payments, in accordance with each partner's respective interest. The disbursement of partnership profits was made by plaintiffs' son, David R. Blackburn, and each partner thereafter controlled his or her share of the partnership profits. David R. Blackburn was approximately 29 years of age in 1945 and was active in the affairs of the partnership.

**3.** As pertinent here, these are:

After considering the intent of the parties and their actions pursuant to the partnership agreement, I conclude that D. E. Blackburn in good faith intended to and and actually did join together with his children, Mrs. Virginia Ogden, Dr. Bill R. Blackburn and David Blackburn, as partners for the purpose of acquiring U. S. Treasury Bonds, with the intent and hope that profit would be derived in the form of interest from such bonds and gain from the sale thereof. Mrs. Virginia Ogden and Dr. Bill Blackburn likewise in good faith intended to and actually did join together with their father, D. E. Blackburn, and their brother, David R. Blackburn, as partners. While the agreement here in question is to be regarded as a partnership under the broad provision contained in Section 3797(a) of the Internal Revenue Code, 26 U.S.C.A. § 3797 (a), it is to be noted that the arrangement takes on many of the characteristics of a co-ownership of securities, and in this respect, the facts in this case are closely analogous to the decision of Allen v. Beazley, 5 Cir., 157 F.2d 970. Moreover, viewing the partnership in the light of the principles announced by the Supreme Court in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, I conclude that Mrs. Virginia Ogden and Dr. Bill R. Blackburn were valid and bona fide partners with D. E. Blackburn during the period here in question and were entitled to

and Lynch v. Commissioner, 7 Cir., 216 F.2d 574, and cases cited, we cannot at all agree.

As appellees point out in their brief, the collector did not in the trial below, he does not here, dispute David's one-sixth interest in the bonds as fixed in the agreement, or that the income derived from that interest was his. Under the facts established and found, it is difficult to understand, it is impossible to accept, the view that the agreement, which created the venture and set it in motion, was valid and the actions under it effective as to David to vest him with the one-sixth interest in the securities which the signatory parties had agreed should be his but was invalid and ineffective as to the other three, with the result that, while as to David's interest in the securities the agreement determines the portion of the income which is his, it must be disregarded as to the other parties to it, and all of the income from the securities dealt with under it, except David's one-sixth, must be attributed to the father.

Whatever might be said of this kind of reasoning as applied to a business or venture in which their father was already engaged and into which he had by the agreement sought to bring his three children, it cannot be accepted under the facts established and found here as to a venture which was created and launched by the agreement, and the interests in which were fixed and established thereby.

■■ Nor is appellant's attack upon the agreement as invalidated by Virginia's coverture, with the result that the interest it accords to her must be attributed to her father, any better supported. The court's conclusion that her separated status had released her from the bonds of coverture to the extent necessary to support her entry into the agreement is sustained by the cases.[4] Moreover, all questions of partnership aside, it is settled law in Texas that coverture does not interfere with, or prevent, ownership by the wife of property,[5] and under the undisputed facts in this case the agreement and the acts under it made her the owner, to the extent of her interest, of the securities bought and sold under the agreement, and of the income derived therefrom.[6]

The district judge's findings and conclusions are well supported in fact and in law. His judgment based on them is affirmed.

---

their respective percentages of the profits derived by the partnership and are not only entitled to but properly reported their share of the partnership net income in his or her individual returns for the years here in question. Accordingly, no part of such income can properly be includible in plaintiffs' income and taxable to them. See Marcus v. Commissioner, 5 Cir., 201 F.2d 850; Miller v. Commissioner, 6 Cir., 203 F.2d 350; Culbertson v. Commissioner, 5 Cir., 194 F.2d 581.

Under the circumstances of this case, I conclude that the Government's argument for the non-recognition of Mrs. Virginia Ogden as a partner by reason of her disabilities of coverture cannot be sustained.

In view of the fact that during the period herein question Mrs. Ogden was separated from her husband, was required to support herself and her children and had a substantial separate estate, I conclude that, under Texas law, she was entitled to her share of the profits of the partnership.

4. Bradley v. Gilliam, Tex.Civ.App., 260 S.W. 289; Service Parts Co. v. Bizzell, Tex.Civ.App., 120 S.W.2d 919, and cases cited.

5. Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243; Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301.

6. Allen v. Beazley, 5 Cir., 157 F.2d 970.