James W. MOSS d/b/a Commercial Service, Appellant,

v.

Emily GIBBS et vir, Appellees.

No. 7207.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 7, 1963.

Rehearing Denied Feb. 4, 1963.

Jack Hazlewood, Amarillo, for appellant.

Monning & Monning, Amarillo, for appellees.

DENTON, Chief Justice.

This is an appeal from a judgment restraining and enjoining appellant, James W. Moss, from attempting to enforce a judgment by execution and sale of three city lots situated in the City of Amarillo. The attempted execution was based on a judgment awarded Moss against Chris Gibbs, the husband of Emily Gibbs, appellee. Mrs. Gibbs instituted this suit seeking injunctive relief on the ground the city lots were her separate property and not subject to execution by her husband's judgment creditors. The case was submitted to a jury. In response to the one special issue submitted, the jury found the lots in question were paid for by Mrs. Gibbs out of her separate funds and rents from her separate property. Based on this jury verdict, the trial court entered judgment enjoining the attempted execution.

On April 11, 1961, Moss obtained a judgment against Chris Gibbs. On May 15 of that year execution was issued, and thereafter levy was made on the three city lots by the sheriff. Before the sale was made as advertised, the trial court enjoined such sale and this suit followed. It is the contention of appellees that Mrs. Gibbs acquired the three lots on June 4, 1941, as her separate property and, as such, the property is not subject to the payment of a debt incurred by her husband. The principal question to be decided is whether or not the property involved is subject to the indebtedness of the husband. Mr. and Mrs. Gibbs have been married since 1912. In 1919 Mrs. Gibbs' uncle gave her five or six head of cattle and from time to time he gave her a total of approximately thirty cattle. These cattle were sold and the money received was retained by her. In 1924 she established her own bank account. The proceeds from the sale of these cattle were

placed in her bank account and from this same account she bought and sold other cattle periodically. This practice went on for some twenty years. The husband had no authority to withdraw funds from his wife's account and he has never made a claim to any interest in it. When she acquired the three lots in 1941, Mrs. Gibbs paid the full consideration of $1,000.00 with a check drawn on her account. The deed conveyed title to Mrs. Gibbs only, but did not recite the property was her separate property. It is undisputed that Mrs. Gibbs' bank account, established after her marriage, was derived from the following: The sale of cattle received as a gift from her uncle; sale of other cattle purchased from funds in this account; rents from a rent house which was acquired by funds from this account; and monies received from her husband in payment of money advanced to him for living expenses.

It is evident that the original monies used in opening the bank account constituted the separate property of Mrs. Gibbs. This was the money she received from a sale of the cattle which had been given her as a gift. Proceeds from the sale of separate property assumes the same status as the property sold. Estrada v. Reed (Tex.Civ.App.), 98 S.W.2d 1042 (Error Refused). As a general rule the intrinsic character or status of separate property is not affected by any changes or mutation in its form. That is to say, the character of separate property will not be altered by the sale, exchange, or substitution of the property provided that the property can be traced or identified as separate property. 30 Tex.Jur.2d, Husband and Wife, Section 75, page 132, and cases therein cited. There is positive evidence to the effect the proceeds of the sale of the initial cattle were placed in Mrs. Gibbs' individual bank account. She purchased a rent house in 1937 with funds from this bank account. Rents from this property were also placed in the account. The deed to this property was conveyed to Mrs. Gibbs as her separate property. It is quite obvious from the record that Mrs. Gibbs exercised a very real and positive control over these funds and the properties she acquired. In fact, many of her transactions were completed without the knowledge of her husband.

Appellant contends that since the proceeds of the cattle sales and rents from the house are community property, the lots are community property and thus subject to community debts created by the husband. Appellant further contends that as there was a co-mingling of separate and community property, the property became community property. We are unable to agree with these contentions. Although rents and revenues from the wife's separate property are community property, they are under the exclusive control and management of the wife. It is equally well settled that such rents and revenues may not be subject to the payment of debts contracted by the husband either by execution or otherwise without the consent of the wife. Article 4616, Vernon's Ann.Tex.St.; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243; Bearden v. Knight, 149 Tex. 108, 228 S.W.2d 837; Van v. Webb (Tex.Civ.App.), 237 S.W.2d 827 (Refused), (NRE). Since Bearden v. Knight was decided in 1950, Article 4616 was again amended in 1957. This amendment eliminated language listing specific items of revenue or income of the wife which were exempt from her husband's debts, and inserted the broad phrase, "revenue from her separate property". It is thus clear that the legislative intent was to exempt all kinds of revenue from the wife's separate property.

The question that next presents itself is whether the wife's management and control will continue over additional property acquired by the wife from rents and revenues under her management and control. In Hawkins v. Britton State Bank the court held that farm equipment purchased from the rent of the wife's separate

land was under her exclusive management and not subject to the debts of the husband. It has also been held that where community income from a trust of a wife's separate property was invested by purchasing savings bonds, both the income and the savings bonds so purchased were exempt from the husband's debts. Mercantile Nat'l Bank at Dallas v. Wilson (Tex.Civ.App.), 279 S. W.2d 650 (Refused), (NRE). The writer is impressed with the scrupulous manner in which Mrs. Gibbs controlled and managed her funds and property purchased therewith. Although it is not a controlling factor, it is apparent from this record that these funds and property were at all times considered to be the separate property of the wife by both Mr. and Mrs Gibbs. Both the Hawkins case and the Bearden case based their conclusion that the rents and revenues from the wife's separate property are exempt from the husband's debts on the power of management given the wife over her separate property as provided for in Art. 4614 and the exemptions set out in Art. 4616. In our opinion, the broader language of Art. 4616 as amended in 1957 must be interpreted so as to broaden the power of management by the wife. It logically follows that this power of management and control by the wife should be exercised over the property she has acquired from the accumulation of rents and revenues from her separate property. We, therefore, conclude that property acquired by the wife from reinvested funds accumulated from rents and revenues from her separate property is not subject to the payments of the debts of the husband either by execution or otherwise without the consent of the wife. To hold otherwise would deny the wife the right to reinvest the funds of her estate without the property being subjected to the husband's creditors. In our view, this is contrary to the spirit of our property laws dealing with the wife's separate property.

The record reflects no error in the trial court's judgment and the judgment is accordingly affirmed.