James W. MOSS, Petitioner,

v.

Emily GIBBS, joined pro forma by her husband, Chris Gibbs, Respondents.

No. A–9497.

Supreme Court of Texas.

July 31, 1963.

Rehearing Denied Oct. 2, 1963.

Neal & Hazelwood, Amarillo, for petitioner.

Monning, Monning & Umphries, Amarillo, for respondents.

NORVELL, Justice.

Essentially, this is a "special community property" case. The petitioner, James W. Moss, sought to levy upon three town lots in Amarillo, Texas, under a writ of execution to satisfy a judgment against Chris Gibbs, the husband of respondent, Emily Gibbs. The trial court entered a perpetual injunction restraining petitioner and the sheriff of Potter County from selling the lots in question. The injunction was based upon a jury finding that said lots "were paid for (by Emily Gibbs) out of her separate funds and rents from her separate property." The Court of Civil Appeals affirmed. 364 S.W.2d 268. The appellant court seems to have based its decision primarily upon the holding that the lots in question belonged to the special community and were exempt from the payment of the husband's debts.

The controlling question ultimately reached is whether we should follow or overrule Strickland v. Wester, 131 Tex. 23, 112 S.W. 2d 1047 decided by this Court in 1937. We have decided to adhere to the rule of the Strickland case for the reasons hereinafter discussed. Accordingly, the judgments of the trial court and the Court of Civil Appeals are reversed and judgment here rendered vacating the injunction.

Despite some contention to the contrary, the undisputed evidence shows that the three lots in controversy are the community property of Emily and Chris Gibbs and not the separate property of Emily Gibbs. The following statement is based upon the testimony of Mr. and Mrs. Gibbs:

Before her marriage, Emily Gibbs worked for a Mr. Harding. She received her board and Mr. Harding "gave her a calf or two" and a Mr. Dysart gave her a horse. She sold these animals and kept the money. According to Chris Gibbs, "she didn't have enough to put in a bank account, so she just kept it until she finally sold and traded around until she had enough to start her own bank account."

Mr. and Mrs. Gibbs were married in 1912 and thereafter her uncle gave her cattle from time to time which she sold and purchased more cattle with the proceeds. She received some thirty head of cattle from her uncle,—five or six at a time,—over a period of time extending from 1919 into the 1940's.. Mrs. Gibbs' cattle buying and selling operations stemmed from the cattle and a few horses given to her by her uncle and Mr. Harding and Mr. Dysart.

Mrs. Gibbs testified that when the cattle were poor she fed them and when they got fat she sold them; that the proceeds of these sales were put in the bank account which she maintained and when she wanted to purchase cattle she wrote a check on this bank account to pay for them. She stated that she made a profit by buying and selling cattle.

In 1937, Mrs. Gibbs purchased a rent house and paid for it out of the bank account mentioned. This property is not directly involved here and we may assume that it was separate property as recited in the deed which she received.

The money in Mrs. Gibbs' bank account came from three sources, namely, (1) her cattle operations, (2) rents from separate property owned by her and (3) re-payments of loans made to her husband in order to meet household expenses. Mr. Gibbs did not draw checks against this account.

In 1942, Mrs. Gibbs purchased the three lots here involved and paid for them with a

check drawn on her bank account. She had destroyed her cancelled checks and deposit slips, but the bank's ledger sheet of her account showed deposits of $621.90, $1,100.00, $550.67, $507.67, $55.00, $507.67, $73.00, $1,142.66, $316.00, $200.00 and $919.74 for a period of time extending from August 4, 1941 to June 10, 1942.

In explaining the $1,100.00 item mentioned above, Mrs. Gibbs said:

"Well, we sold some cattle, I guess, and deposited it. I was buying and selling, and I would put it back again, and I was making money at that time."

Similar explanations were made of other items. One witness testified that he had bought cattle from Mrs. Gibbs and also sold cattle to her. Chris Gibbs testified that his wife would pay him pasture rent for her cattle when she was fattening them for market.

No attempt at tracing the original separate investment into specific property was made other than that indicated by the keeping of the bank account by Mrs. Gibbs and her general testimony as to what went into the account and what was paid out therefrom.

We think the evidence shows without dispute that Mrs. Gibbs was in the business of buying, feeding and selling cattle. The greater part of her bank account in 1942 was accounted for by her cattle operations. She was buying and selling at a profit and the revenues of her business were community property. No portion of the bank account as it existed in 1942 could be traced and identified as Mrs. Gibbs' separate property. It had been thoroughly commingled with the community. William O. Huie, Commentary, Texas Community Property Law, 13, Vernon's Ann.Tex.Stats. 1, 1. c. 32 § 10, Problems Involved in Separating Income from Principal. See also, 28 Tex.Law Review 576; 29 Tex.Law Review 339.

■ Mr. Gibbs, so far as the testimony shows, made no attempt to interfere with his wife's management of her cattle business, nor her control over her rent house operations. He drew no checks upon his wife's bank account, nor did he deposit any money therein, except perhaps in payment of loans made to him by his wife. Upon occasion he provided pasturage for cattle and received payment therefor from his wife. At his wife's direction, he sometimes delivered cattle which she had sold. This testimony shows no more than a noninterference with his wife's business activities. It does not establish a gift of his community interest in the profits realized from such operations. If mere noninterference would establish a gift, then all special community revenues and earnings could be transmuted into separate property by a mere assertion or claim made by the husband and wife at any time convenient or advantageous to them, even though the rights of creditors might be affected. From the standpoint of a creditor, the distinction between special community and separate property becomes important when money, or the property originally received from the wife's earnings and profits is converted into a different form or species of property through exchange or mutation.

The three lots upon which the execution levy was made were purchased by Mrs. Gibbs in 1942 and paid for with a check drawn upon her bank account. The deed to the lots contained no recitation that the property was conveyed to her as a part of her separate estate.

The debt upon which the judgment supporting the writ of execution is based was contracted by Mr. Gibbs in 1960, some eighteen years after the acquisition of the three town lots in question here. As above stated, the Court of Civil Appeals was of the opinion that these lots were a part of the special community and were not subject to the payment of debts contracted by the husband without the consent of the wife.

The term "special community" had its origin in legislative attempts to enlarge upon the constitutional definition of sepa-

rate property. In Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, it was held that:

"It is a rule of construction of Constitutions that ordinarily, when the circumstances are specified under which any right is to be acquired, there is an implied prohibition against the legislative power to either add to or withdraw from the circumstances specified. Koy v. Schneider, 110 Tex. 378, 218 S.W. 479, 221 S.W. 880; Dickson v. Strickland (Tex.Sup.) 265 S.W. 1015; Ex parte Vallandigham, 1 Wall. 252, 17 L.Ed. 589; Cooley's Constitutional Limitations, p. 99; 6 R.C.L. § 43. Hence, when the Constitution says that as to property, not owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specified modes, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property."

■ The rents and revenues from the wife's separate property and her personal earnings are not within the constitutional definition of separate property, Article 16, § 15, Texas Constitution, Vernon's Ann.St., in that they are not acquired by gift, devise or descent.

The Court, however, also stated that:

"The sum of our conclusions is: The Legislature, in defining the wife's rights in and to her separate property and property held in common with her husband, could lawfully deprive the husband of the power granted him for many years to manage and control the wife's separate property and portions of the community property which were derived from use of the wife's separate property or from her personal exertions, and could confide the management, control, and disposition thereof to the wife alone, and could exempt, not only her separate property, but said portions of the community from payment of the husband's debts. In making this grant of enlarged rights to the wife, and working the corresponding diminution in rights to be exercised by the husband, the Legislature was lawfully defining the wife's rights in both her separate estate and common property, as expressly authorized by the Constitution. But the Legislature could not divest the husband of all interest in and to property which, under the Constitution, was guaranteed either to the community or to the husband's separate estate, and use the same to enlarge the wife's separate estate beyond its constitutional limits."

■ Special community property therefore is that portion of the community which is under the wife's exclusive control and is not liable for the husband's debts.

■ The lots in question are community property. As such they are subject to the payment of the husband's debts unless they belong to the special community,—a purely statutory creation. If the property is to be held exempt from execution for the husband's debts, it is essential that there be some statutory provision which makes it exempt.

In contending that the property is nonexempt, the petitioner relies upon Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047, wherein this Court said:

"A careful consideration of the question has led to the conclusion that when such earnings (of the wife) are converted into other property, that property is subject to the payment of debts contracted by the husband the same as any other community property."

There is a close analogy between Strickland and the present case. Mrs. Gibbs converted the proceeds of her cattle operations and the income received from rent property into the town lots now in controversy.

The respondent in a well considered argument adopts the thesis set forth by Professor Huie in his Commentary heretofore mentioned. Briefly stated, it is contended that although the Legislature, because of constitutional considerations, failed in its attempt to classify the revenues from the wife's separate estate and her personal earnings as her separate property, it is abundantly clear that the Legislature intended that the revenues from her separate estate and her earnings should be subject to her control and free from the debts of her husband to the same extent as if they were separate property. Under this theory, the only essential difference between the wife's separate property and the special community would be that the husband would retain his half interest in the special community. Insofar as the wife's control of the property and its exemption from the husband's obligations are concerned the two classes of property would receive the same legal treatment so long as the community remained in existence. It would follow that the same rules would apply to mutations of the special community as are applicable to the wife's separate property.

It is conceded that the statutory wording relied upon to bring about this result is not entirely clear. For example, the 1925 codification of the Revised Statutes omits certain provisions as to the wife's control of the special community. A similar omission occurs in the 1957 Act amending Articles 4614, 4616, 4617 and 4623, Vernon's Ann.Civ.Stats. Acts 1957, 55th Leg., Reg. Session, ch. 407, p. 1233. The briefs contain some discussion of these matters which we need not dwell upon at length here. See, Beardon v. Knight, 149 Tex. 108, 228 S.W.2d 837; 1 Speer, Marital Rights in Texas (4th Ed.) 488; Huie, Commentary, Community Property Law of Texas, Vol. 13, Vernon's Ann.Tex.Stats., p. 39; Blevins, Recent Statutory Changes in the Wife's Managerial Powers, 38 Tex.Law Review 55; Conant, Article 4614—Problems Ahead, 14 Baylor Law Review 207. It is not, however, essential to a decision of this case to examine these matters in detail, because the logical result of the adoption of Professor Huie's views would be the overruling of Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047 and this step is advocated by Professor Huie in his Commentary.

Respondent's contention is that as mutations of separate property retain their separate character in law, Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 677, the same rule should be applied to the special community. Strickland v. Wester strictly construes the applicable statute as being an exemption provision which is not applicable to mutations and this holding squarely conflicts with Professor Huie's thesis which we are urged to adopt.

Respondent reminds us of the dictum of Mr. Justice Holmes, sitting as the Circuit Justice in Johnson v. United States, 1 Cir., 163 F. 30, 18 L.R.A.,N.S., 1194 that:

"[I]t is not an adequate discharge of duty for courts to say: We see what you (the Legislature) are driving at, but you have not said it, and therefore we shall go on as before."

Cabell v. Markham, 2 Cir., 148 F.2d 737, (reversed, Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165) is likewise cited, wherein Judge Learned Hand said:

"Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

It is said that Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243 is in conflict with Strickland v. Wester and despite its being the earlier case, the rule

stated therein is correct and should govern this case.

In the Hawkins case, this Court held that a hay press, mower, sulkey rake and buck rake apparently purchased by the wife out of the rents and revenues realized from a separately owned farm and used in connection with her separate farming operations was subject to her exclusive control and could not be mortgaged by the husband.

The case is consistent with respondents' theory in that it can be reasonably argued that it represents an instance where this Court held that mutations of the special community (farm machinery purchased with the revenues from separate property) were under the exclusive control of the wife. On the other hand, as urged by the petitioner, the Hawkins case can be reconciled with *Strickland* by regarding *Hawkins* as being in the nature of an exception to the general rule set forth in the Strickland case. This is a permissible view and is supported by the rationale set forth in the Hawkins opinion.

Article 4616 as amended in 1957 provides that:

"Neither the separate property of the wife, her personal earnings, nor the revenue from her separate property shall be subject to the payment of debts contracted by the husband nor claims arising out of the torts of the husband."

Any difference in wording between the present statute and its predecessor articles is immaterial to the decision of this case. See, historical note, Article 4616, Vernon's Ann.Tex.Stats.

In Strickland v. Wester the issue was whether or not a certain town lot standing in the name of the wife was subject to the husband's debts. In the course of its opinion, this Court said:

"According to the testimony of Mrs. Wester, she purchased this lot from her husband with money which she earned as a school teacher. She had been teaching 27 years at the date of trial, and many years ago she and her husband, who was also a teacher during his lifetime, entered into an agreement that her personal earnings should be her separate property. That agreement was not valid, for the community property law cannot be changed by contract. Her personal earnings were not subject to the payment of debts contracted by her husband, Article 4616, R.S., but they constituted a part of the community estate. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243; In re Gutierrez, D.C., 33 F.2d 987. A careful consideration of the question has led to the conclusion that when such earnings are converted into other property, that property is subject to the payment of debts contracted by the husband the same as any other community property."

Here is a definite holding based upon "a careful consideration of the question" that the statutory exemption of the special community does not extend to mutations thereof.

In Hawkins v. Britton State Bank the question of control of the special community was directly involved. The husband had attempted to exercise control by mortgaging certain items of farm machinery which the wife claimed was a part of the special community. The attempt of the husband's creditor to foreclose the mortgage gave rise to the question of whether or not the farm machinery involved was subject to a debt contracted by the husband. Had this Court at the time of the Hawkins decision been of the opinion that the statutory exemption extended to all mutations of the special community it could have said so in language as clear as that employed in Strickland v. Wester in stating the contrary conclusion. It may be said that the basis of the Hawkins decision was the circumstance that the wife in the process of managing her separate estate

had used special community funds (over which she had exclusive control) to purchase equipment which was essential to an effective control or management of her separate property. This Court pointed out that under the statute the wife has control of her separate property and that such control would be effectually defeated if she were prevented from using the revenues from such separate property to provide the necessary equipment to operate her separate estate. It was stated that:

> "It would be idle to say that the statute intends to confer on the wife the bare right to control and manage the land itself, but that the minute the rents she has contracted for come due, or the minute such rents are collected, the husband can take charge thereof, and use them to suit himself, all without the wife's consent and against her will. Such a holding would saddle the wife with all the burdens incident to the management of her estate but rob her of all benefits, and render the statute but an idle and a vain thing."

In the present case the property purchased by the wife's profits and income from the separate rent houses was not something essential to or used in connection with the operations of the wife's separate estate. The special community funds were simply used to buy an additional piece of community property. It is a pure case of mutation and regardless of whether the property purchased be held exempt from the husband's debts, the wife's management of her *separate* estate is not affected.

■ The question does not reach us in the same posture as if Strickland v. Wester had never been decided. It may be reconciled with the Hawkins decision as pointed out by the petitioner and if there be any conflict between two cases, the later case is ordinarily held to modify the earlier holding.

In determining whether or not we should overrule Strickland there are these factors

to be considered: This is essentially a matter of statutory construction. The literal wording of the statute supports the decision made in *Strickland.* Article 4616 provides that neither the wife's "personal earnings, nor the revenues from her separate property shall be subject to the payment of debts contracted by the husband." It does not speak of personal earnings and revenues from her separate property and all mutations thereof. It is necessary to construe the statute to include mutations in order to affirm the proposition urged upon us by the respondent.

■■ This matter of construction was before this Court in 1937 in the Strickland case and a strict and literal interpretation of the statute was adopted. In the field of statutory construction the doctrine of stare decisis may be of most compelling force. Some twenty-six years have passed and some thirteen regular legislative sessions have taken place since Article 4616 was construed by this Court in the Strickland case. Seemingly no legislative dissatisfaction with the Strickland construction has been manifested, despite the fact that a comparatively simple amendment would have rendered respondents' theory as to the nature, qualities and exemptions of the special community fully operative. This indicates either that the Legislature approved of the Strickland construction or that the general dissatisfaction therewith was not of sufficient strength to impel legislative action. It may not be considered desirable to effect a statutory enlargement of the special community exemption over that recognized by the Strickland case. This is now a policy matter for the Legislature.

■ While the effect which should be given to legislative inaction varies with circumstances, we think that the statement of Mr. Justice Jackson in United States v. South Buffalo Ry. Co., 333 U.S. 771, 68 S.Ct. 868, 92 L.Ed. 1077, has application here:

> "It is the Government's contention that the Elgin decision misconstrued the

Act, misunderstood its legislative history and misapplied the Court's own prior decisions. It is not necessary in the view we take of the case to decide to what extent, if any, these contentions are correct. It is enough to say that if the Elgin case were before us as a case of first impression, its doctrine might not now be approved. But we do not write on a clean slate. What the Court has written before is but one of a series of events, which convinces us that its overruling or modification should be left to Congress. As the Court held on our last decision day, when the questions are of statutory construction, not of constitutional import, Congress can rectify our mistake, if such it was, or change its policy at any time, and in these circumstances reversal is not readily to be made. Massachusetts v. United States, 333 U.S. 611, 68 S.Ct. 747 [92 L.Ed. 968]. * * *"

We decline to overrule Strickland v. Wester. An order of reversal will be entered in the terms heretofore indicated.

SMITH and STEAKLEY, JJ., dissent.

SMITH, Justice (dissenting).

This is a "special community property" case. The controlling question is whether the courts are going to give to the wife the contractual power necessary to effectuate her power to manage the special community estate? It has been held that the wife does have the power to manage certain revenues derived from her separate estate. Therefore, it should follow that she has the power to manage her personal earnings to the extent of investing such earnings which are a part of the special community estate without fear of having such property subjected to the payment of the husband's debts. It is my view that the case of Bearden v. Knight, 149 Tex. 108, 228 S.W.2d 837, by this court, and the statutes stand for the proposition that all revenues from the wife's personalty are under her sole management and control. The case of Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047 (1938), also by this court does not deny the power of a married woman to manage the special community. It holds that the personal earnings of the wife " * * * were not subject to the payment of debts contracted by her husband, Article 4616, R.S., but they constituted a part of the community estate." The Court, however, goes on to hold that " * * * when such earnings [personal earnings] are converted into other property, that property is subject to the payment of debts contracted by the husband the same as any other community property." This latter holding throws the Strickland case out of harmony with the cases like Bearden which hold that the wife has the power to manage and control the "special community," and that to deny such control would materially interfere with the express power to manage the separate estate.

If we are now concerned, and I think we are, with a factual situation which establishes a "special community" status, then I think the same rules as laid down by the courts in regard to separate property when it undergoes mutations and changes should be applied in a case involving a "special community" estate. What is the rule in Texas where separate property undergoes mutations and changes? The holding in the case of Stephens v. Stephens, (1927) Tex.Civ.App., 292 S.W. 290, wr. dism., was to the effect that the separate estate of the husband or wife, whether money or property, may undergo mutations and changes and still remain separate property so long as it can be clearly traced and identified. This holding was expressly approved by the Court in the case of Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 676, (1953). The principle announced in the Stephens and Norris cases should apply with equal force in the present case, otherwise the managerial career of Mrs. Gibbs or any wife in like circum-

stances can be brought abruptly to an end upon the exercise of her right to manage and control the "special community" by the investment of such property in "other property." So far as a "special community" estate is concerned, it should be the law that so long as the "special community" property can be clearly traced and identified, no matter how many mutations it may undergo, such property remains under the control and management of the wife, and is not subject to the payment of debts contracted by the husband. Article 4616, Vernon's Annotated Civil Statutes, expressly provides that neither the separate property of the wife, her personal earnings, nor the revenue from her separate property shall be subject to the payment of debts contracted by the husband nor claims arising out of the torts of the husband. I believe that the enactment of this statute manifested an intention on the part of the Legislature to exempt not only personal earnings, but any property which could be clearly traced and identified as having been acquired with the proceeds of such personal earnings. The Strickland case effectively removes the exemption from Article 4616. Under that case, although the wife has the exclusive right of management, she will not be permitted to invest and reinvest the funds of the "special community" estate without interference from the husband or his creditors. By the Act of 1913, Texas Laws 1913, p. 61, 16 Gammel, Laws of Texas 61, the wife was given the management of her separate property and at the same time the management of the community property was divided between the husband and the wife. See William O. Huie, Commentary, Texas Community Property Law, 13 Vernon's Ann.Tex.Stats. 1, 1. c. 32 § 10, Problems Involved in Separating Income from Principal. See also 28 Tex.Law Review 576; 29 Tex.Law Review 339. By way of digression, I point out that Mr. Huie discusses at some length the case of Norris v. Vaughan, supra. He seems to indicate that the principles announced in that case as to separate property should apply with equal force as to "special community" property. As pointed out in the Huie article, the Act of 1913, used broad terms: "the personal earnings of the wife, and the income, rents and revenues from her separate property," in describing the types of community property that would be liable for debts contracted by the wife, whereas, in describing the types of community property that would be subject to her exclusive management and control and exempted from the husband's debts, the act used more detailed terms, such as: "the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and the dividends on stock owned by her. The Bearden v. Knight case, supra, removed all doubt as to the extent of management that the listing of *certain* varieties of income in the statutes created so far as the revenue from the wife's separate land was concerned. The Bearden case simply held that all revenue from the wife's separate land, whether technically classifiable as rent or not, is under the wife's exclusive management and free from liability for the husband's debts. See Huie, supra. The Bearden case only involved revenue from land; therefore, that case became authority for the proposition that the listing of certain varieties of income was merely illustrative and the statute meant that the revenue from separate realty was to be managed exclusively by the wife. Since the Bearden case only involved the problem of the status of revenue from the wife's separate land, the Court confined its opinion to that problem and made no holding as to revenue from personalty. However, all doubt as to the status of revenue from personalty of types of income not specifically listed was removed upon the enactment of the amendment of the statutes in 1957. By the amendment, which became effective on January 1, 1958, the language listing specific items of revenue was replaced by the broad phrase "revenue from her separate property." Thus it is clear that all kinds of revenue from the wife's separate property, real and personal, were made exempt from the husband's debts.

The 1913 act contemplated that the wife would have the power to manage the "special community" estate; and the omission in the 1925 revision of the act of the express provision of the 1913 act giving her such power is not indicative of an intention of the Legislature to deprive the wife of exclusive management and control, especially in view of the fact that the 1925 revision retained the provision of the 1913 act exempting personal earnings, etc., from the debts of the husband. In my opinion it was the intention of the Legislature that the special community property should remain under the wife's management and control through all of its mutations and changes.

The Court in the present case adheres to the so-called rule of the Strickland case. In doing so, it seems to draw the issue between Professor Huie and the assertion in the Strickland case by this court that "* * * [a] careful consideration of the question has led to the conclusion that when such earnings (of the wife) are converted into other property, that property is subject to the payment of debts contracted by the husband same as any other community property." An examination of the record in the Strickland case leads me to conclude that the peculiar factual background of that case led to the result reached. I submit that the question now before this court was not squarely before the Court in the Strickland case. Clearly, the Court in Strickland was not considering and the points of error were not focused upon whether or not, if there was under the statutes to be a special community estate under the wife's exclusive management, she must be able to invest and reinvest funds of that estate without interference from the husband or his creditors. The Strickland opinion offers no explanation for the above quoted conclusion. There is no satisfactory explanation that can be made. In that case, J. K. Wester, the husband of Mattie L. Wester, was indebted to Strickland in the sum of $600.00, as evidenced by his promissory note and a deed of trust covering lots 4 and 5, in block 28 of the Overton addition to the town of Lubbock. Wester defaulted in the payment of the note. Suit was filed in January, 1931, and judgment on the note and for foreclosure of the deed of trust lien was rendered in favor of Strickland on February 20, 1931. On March 2, 1931, Wester conveyed lot 3, the lot in question, to Mrs. Wester for a recited consideration of $15.00 cash and a promissory note for $200.00, secured by vendor's lien.

Wester died in July, 1934. On October 17, 1934, Strickland filed suit against Mrs. Wester to cancel the deed of conveyance on the ground that it was a fraudulent conveyance made for the purpose of hindering, delaying and defrauding the creditors of J. K. Wester. Mrs. Wester answered, alleging that she purchased the property in controversy with her separate earnings and funds, and that she had no notice of any claim to the property by Strickland.

The trial court granted Strickland's motion for an instructed verdict. The Court of Civil Appeals after giving a recitation of the facts, held that the trial court erred in holding there was no issue of fact to be determined. The holding of the Court of Civil Appeals, 87 S.W.2d 765, was that the rule is that when a creditor attacks a conveyance of this character, made for a valuable consideration, the burden of showing the debtor's insolvency at the time of the conveyance is on the creditor, citing authorities. The Court declined to discuss the evidence, but remanded the case for a new trial with the statement: "Plaintiff did not prove his case with that degree of certainty which warranted the court in directing a verdict."

Although the opinion of the Court of Civil Appeals makes no reference to an issue of gift, and did not reverse the case on the ground that the evidence raised an issue of fact as to a gift, this court, nevertheless, in affirming the reversal said that: "As we understand the opinion of the

Court of Civil Appeals, that court held * * * that the evidence raised an issue of fact as to a gift by Mr. Wester to her of her earnings * * *." I am unable to find anything in the opinion upon which this court in 1938 could have based such a conclusion. It is my impression that the circumstance that the wife bought the land from her husband the next day after Strickland had advertised lots 4 and 5 for sale influenced the decision. Even so, and in spite of the allegations of fraud, this court theorized that there was an issue of fact to be submitted to a jury or the trier of facts in the trial court. The Strickland case is entirely out of line with the previously decided case of Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243 (1932). It is significant that the Strickland case (1938) did not question the Hawkins case. This for the reason that the questions of the exclusive management of her separate estate and the right to invest and reinvest the funds of that estate (either separate or special community) were not squarely before the Court in the Strickland case. It is also worthy of note that in Bearden v. Knight, (1950), supra, the Hawkins case was cited as a controlling precedent. The holding in the Hawkins case that certain haying implements, purchased out of rents accruing from the separate estate of Mrs. Hawkins, was not subject to sale by Mr. Hawkins, the husband, was based primarily upon the Court's interpretation of the statutes. The opinion admits of no interpretation to the effect, as some would argue, that the haying implements were held to be the separate property because such implements were *used* by the wife in the operation of her separate property farm. The certified question before the Court was:

"Did the trial court and this court err in deciding that the haying implements, purchased out of rents accruing from the separate estate of Mrs. Hawkins, was community property and subject to sale by M. D. Hawkins, the husband, in order to pay the debt he had contracted to the bank?"

The Court, after stating that the Act of 1913 materially changed and enlarged the rights of the wife relative to her separate property, held:

"From what we have said above it is evident that we hold that under the provisions of the 1913 act, supra, and all subsequent valid acts, the rents from the wife's separate lands are community property, that is, they belong to the community estate but they are under the exclusive management and control of the wife, and cannot be subjected to the payment of debts contracted by the husband, either by execution or otherwise, without the wife's consent."

The Court went further to say that in making this grant of enlarged rights to the wife, and working the corresponding diminution in rights to be exercised by the husband, the Legislature was lawfully defining the wife's rights in both her separate estate and common property, as expressly authorized by the Constitution.

The Court, in effect, held that the investment by the wife in purchasing the haying implements was such a change as was contemplated by the statute, and that such property was not subject to the payment of debts contracted by the husband. Common sense leads to the conclusion that if there is to be a special community estate under the wife's exclusive management, she must be able to invest and reinvest the funds of that estate without interference from the husband or his creditors. The Hawkins case is the answer to the problem presented in the present case, whereas on the basic question of the applicability of the tracing principle to the community property under the wife's management, the Strickland case is entirely out of line with the well-reasoned authorities herein relied upon. The Strickland case has done nothing more than becloud the area of the community property law involved in this controversy.

The only purpose of this dissent is to draw the line between the theories of law

to be applied in a case such as this. Therefore, I deem it unnecessary to consider the claim of the respondent, Mrs. Gibbs, that she has met the burden of tracing the mutations of her separate earnings into the property involved, for such issue is entirely distinguishable from the issue upon which both the Court's opinion and this dissent is predicated. Until the Court reaches this question, I shall not attempt to solve it.

STEAKLEY, J., joins in this dissent.