Honorable Roy Blake Chairman Senate Administration Texas State Senate P.O. Box 12068 Austin, Texas 78769
Honorable Bill Haley Chairman Public Education Committee Texas House of Representatives P.O. Box 2910 Austin, Texas 78722
Re: Whether commercial feed lots are subject to the Texas Feed Control Act of 1957 (RQ-1314)
Gentlemen:
You ask that we examine Attorney General Opinions C-105 (1963) and H-895 (1976) to determine whether they correctly decided that commercial feed lots are not subject to the Texas Commercial Feed Control Act of 1957.
The Texas Commercial Feed Control Act of 1957[1] was enacted to protect the purchasers of feed. In setting out the public necessity for the act in the emergency clause, the legislature noted:
 The fact that present laws are not adequate to regulate the manufacture and sale of commercial feed in Texas; the fact that raisers in Texas of livestock, poultry, and other animals need uniform guaranties and labeling of feeds which are offered to them; and the further fact that it would be of great material advantage to have the laws of Texas conform insofar as practicable with the present-day practices of feeders and feed manufacturers, and to afford maximum protection to the purchasers of feed, create an emergency and imperative public necessity. . . .
Acts 1957, 55th Leg., ch. 23, § 21 at 46.
Six years after the passage of the act, the attorney general was called upon to advise whether the act's provisions apply to a commercial feed lot that contracts with the owner of stock to keep and feed the stock at the feed lot. Attorney General Opinion C-105 (1963) determined that it did not. The basis for the holding in C-105 is that rather than selling feed to a purchaser, a commercial feed lot performs a service, the keeping of stock, for which feeding is incidental. In traditional terms, feed lot operators are engaged in "agistment," the bailment of animals for the purpose of grazing and pasturing. See Barclay v. Burge,245 S.W.2d 1021 (Tex.Civ.App.-Beaumont 1952, no writ). The distinction between sale and service separates those who are subject to the act from those who are not. Feeding animals as part of agistment is not "distributing feed" within the meaning of the Texas Commercial Feed Control Act of 1957.
The distinction between sale and service is often inexact. In this context, however, when the distinction as applied is considered against the background of the act's policy, it stands to reason. As set out in the act's emergency clause, the policy behind the act is to protect the purchasers of feed. When a rancher buys feed to give directly to his own stock, he is protected as a purchaser by the act. When a rancher contracts with a feed lot to keep and feed his stock, he is not protected by the act, since he is not a purchaser, but he is protected under the law of agistment as a bailor. If the stock is damaged, the burden of proof is upon the feed lot as bailee to show that the damage was not caused by negligence on the feed lot's part. Barclay v. Burge, 245 S.W.2d at 1022-23. So the sale-service distinction as applied is consistent with the policy behind the act.
Although this may be a close question, we are not interpreting the act for the first time. In the quarter of a century that has passed since Attorney General Opinion C-105 was issued, no court has rejected this office's interpretation of the act, and the legislature has not amended the act so as to make clear any intention to cover commercial feed lots. We view this legislative inaction as dispositive of this question of statutory interpretation. Since 1963 the legislature has met in regular session fifteen times. By failing to amend this act, the legislature has sanctioned the construction set out in Attorney General Opinion C-105.
Our conclusion, however, is supported by more than this twenty-five year failure to amend the act. In 1976, at the behest of the House Agriculture and Livestock Committee, this office reviewed Attorney General Opinion C-105. Just before the opening of the 1977 regular session of the 65th Legislature, this office advised the House Agriculture and Livestock Committee in Attorney General Opinion H-895 (1976) that it reaffirmed Attorney General Opinion C-105. Yet even though the 65th Legislature is the only legislature to ever amend the act (Acts 1977, 65th Leg., ch. 641 at 1629), it did not amend the act so as to reject Attorney General Opinion C-105. When an act is amended in some respect, but not amended to change a construction placed on the act by the attorney general, that is strong evidence of legislative sanction of the attorney general's construction. See San Antonio Union Junior College Dist. v. Daniel, 206 S.W.2d 995, 998 (Tex. 1947).
As further evidence of legislative sanction of this office's construction, the 67th Legislature adopted a revision of the statutes relating to agriculture, incorporating them into the Agriculture Code, and again chose not to amend the act. See Acts 1981, 67th Leg., ch. 388 at 1012. When the legislature reenacts a statute without change, the legislature is presumed to have ratified prior statutory constructions. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 187 (Tex. 1968); Federal Crude Oil Co. v. Yount-Lee Oil Co., 52 S.W.2d 56, 62 (Tex. 1932). Given all this evidence of legislative approval of this office's construction, we are not inclined to overrule Attorney General Opinion C-105.
Moreover, with respect to the Texas Feed Control Act of 1957, this office has for twenty-five years advised that commercial feed lot operators do not come within its terms and are therefore not subject to its criminal sanctions, found in subchapter G of chapter 141 of the Agriculture Code. Given this criminal liability, only the very most compelling reasons would cause us to change our view of the scope of the act.
As one reason, it is suggested that when the act was revised and incorporated into the Agriculture Code, its terms were changed so that they now cover commercial feed lots. The argument runs as follows: By omitting any definition of "sell" in section 141.001 and by defining "distribute" to mean "otherwise supply" in section 141.001(6), the legislature rejected the sale-service distinction and thereby subjected commercial feed lot owners to chapter 141 of the Agriculture Code.
In fact, however, the terms of the act were not changed by the adoption of the Agriculture Code. Former article 3881e, section 3, provided in pertinent part (emphasis added):
(b) The term "sell" or "sale" includes exchange.
 (c) The term "distribute" means to offer for sale, sell, barter, or otherwise supply commercial feeds.
The Agriculture Code provides in section 141.001(6) (emphasis added):
 `Distribute' means sell, offer for sale, barter, exchange, or otherwise supply.
Thus both the original version and the codification always applied to feed that was otherwise supplied. Attorney General Opinion C-105 simply held that what is being supplied by a commercial feed lot is not feed, but the service of keeping stock.
The revision of the Texas Commercial Feed Control Act of 1957, when codified as chapter 141 of the Agriculture Code, made no change in the law, as construed in Attorney General Opinion C-105. Moreover, we do not think that a change as significant as broadening the scope of the act can be inferred from such a subtle revision of the definitions of the statute.
It is also suggested as a reason for changing our interpretation that the sale-service distinction makes no sense in light of the operations of modern commercial feed lots. We have reviewed the materials submitted regarding modern commercial feed lots. Modern lots share with lots of thirty years ago the characteristic of being bailees of the stock they keep. If it is desirable, however, in light of modern operations to provide owners of stock protection beyond their status as bailors by subjecting commercial feed lots to chapter 141 of the Agriculture Code, that is a policy matter for the legislature. See Moss v. Gibbs,370 S.W.2d 452, 458 (Tex. 1963).
 SUMMARY
Having reconsidered Attorney General Opinions C-105 and H-895, we again hold that the Texas Commercial Feed Control Act of 1957, now codified as chapter 141 of the Agriculture Code, does not apply to feed lots which merely keep and feed stock for the owner.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by F. Scott McCown Assistant Attorney General
[1] The act was originally found at article 3881e, V.T.C.S., but is now codified as chapter 141 of the Agriculture Code. The act has been amended only once. Acts 1977, 65th Leg., ch. 641 at 1629. That amendment, relating to the inspection fee provided by the act, has no bearing on what transactions are covered by the act. Revision of the act as chapter 141 of the Agriculture Code was without substantive change. Agric.Code. § 1.001.