Honorable George Pierce Chairman Committee on Urban Affairs Texas House of Representatives P. O. Box 2910 Austin, Texas 78769
Re: Procedures for protesting a proposed change in a zoning classification (RQ-1472)
Dear Representative Pierce:
You request our opinion concerning the proper interpretation of sections 211.006 and 211.007
of the Local Government Code as they relate to protests of proposed zoning changes. Section 211.007(c) requires written notice of proposed zoning changes to be sent to `each owner, as indicated by the most recently approved municipal tax roll, of real property within 200 feet of the property on which the change in [zoning] classification is proposed.' Section 211.006(d) provides the following:
 (d) If a proposed change to a regulation or boundary is protested in accordance with this subsection, the proposed change must receive, in order to take effect, the affirmative vote of at least three-fourths of all members of the governing body. The protest must be written and signed by the owners of at least 20 percent of either:
 (1) the area of the lots or land covered by the proposed change; or
 (2) the area of the lots or land immediately adjoining the area covered by the proposed change and extending 200 feet from that area. (Emphasis added.)
You ask whether section 211.006(d)(2) includes owners of property within 200 feet of the area covered by the proposed zoning change only if their property shares a boundary with the property covered by the proposed change.[1] If it requires a common boundary, you also ask whether the adjacent property would have to extend 200 feet to be included in the protest area.
We conclude that section 211.006(d) of the Local Government Code includes an owner of property within 200 feet of the area covered by a proposed change in zoning classification, whether or not the property of the protesting landowner shares a boundary with the area covered by the proposed change or extends a distance of 200 feet from such area.
Prior to the enactment of the Local Government Code, the substance of section 211.006(d) was contained in article 1011e, V.T.C.S. Article 1011e was enacted by the 40th Legislature in 1927. Acts 1927, 40th Leg., ch. 283, § 5, at 424, 425. The predecessor of section 211.007(c), V.T.C.S. article 1011f, was also enacted in 1927. Id. § 6 at 425. As originally enacted, article 1011e provided for the submission of written protests to proposed zoning changes by
 the owners of 20 per cent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending 200 feet therefrom, or of those directly opposite thereto extending 200 feet from the street frontage of such opposite lots . . . .
Article 1011f required notice in terms virtually identical to section 211.007(c).
Article 1011e was amended in 1971 to provide that written protests may be submitted by the owners of 20 percent of either the area covered by the proposed zoning change or `the area of the lots or land immediately adjoining the same and extending 200 feet therefrom.' Acts 1971, 62d Leg., ch. 942, § 1, at 2864. The amendment apparently was an attempt to simplify the language of the statute, but it is unclear whether the legislature intended to change the meaning of the statute. This language was preserved in section 211.006(d)(2) of the Local Government Code.
A careful reading of section 211.006(d)(2) reveals that the phrase `immediately adjoining . . . and extending 200 feet' describes the area from which landowners are permitted to sign a written zoning protest. The phrase does not describe the lots or land eligible to be included in the protest area. Thus, the appropriate reading of section 211.006(d)(2) is that it includes owners of lots or land within the area `immediately adjoining the area covered by the proposed change and extending 200 feet from' the area covered by the proposed change.
Our reading of this provision is supported by the only case to construe the language of what is now section 211.006(d)(2). In Strong v. City of Grand Prairie, 679 S.W.2d 767 (Tex.App.-Fort Worth 1984, no writ), the court read articles 1011e and 1011f in harmony, equating the class of landowners entitled to notice under article 1011f with the class of owners specified in article 1011e:
 The trial court also concluded as a matter of law that under art. 1011e those who are entitled to sign zoning change protests are the same as those entitled to notice by art. 1011f. Article 1011f requires written notice of all public hearings on proposed zoning changes before the city's zoning commission to owners `of real property lying within 200 feet of the property on which the change in zoning classification is proposed . . . as the ownership appears on the last approved city tax roll.' TEX.REV.CIV.STAT.ANN. art. 1011f (Vernon Supp. 1984). The trial court, also as a matter of law, concluded that in determining the base area (or denominator) in which the protest area (or numerator) is 20%, the area of streets is excluded.
We hold that both of these conclusions of law are correct, and that a reading of arts. 1011e and 1011f together, reveals that the intent of the legislature was to permit written protests of proposed zoning changes by the owners of `real property' lying within 200 feet of the property on which the zoning change is proposed, which ownership is determined from the last approved city tax roll.
Since street right-of-way is not included on the tax rolls, the area of the streets was properly excluded. (Emphasis added and citations omitted.)
679 S.W.2d at 770. The court's construction of article 1011e places no emphasis on the conjunctive `and' in the phrase `immediately adjoining . . . and extending 200 feet therefrom' and thus means that an owner of property within 200 feet of the area included in a proposed zoning change is entitled to sign a zoning protest even though his property does not share a boundary with the area covered by the proposed change or extend the entire 200 feet from the area covered by the proposed change.
A statute is the creation of the legislature, and if an interpretation of a statute by the courts is unacceptable to the legislature, the simple remedy is to amend the statute. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182 (Tex. 1968). Thus, when the legislature amends a statute, the courts presume that the legislature was fully aware of the construction given the statute by the courts at the time of the amendment. See Warthan v. Haynes, 288 S.W.2d 481, 484 (Tex. 1956). The failure of the legislature to amend the statute to avoid a particular construction placed on a provision of the statute is considered significant, especially if the statute has been amended in other places. See, e.g., Moss v. Gibbs, 370 S.W.2d 452 (Tex. 1963); San Antonio Union Junior College Dist. v. Daniel, 206 S.W.2d 995
(Tex. 1948). In such instances, the legislature's inaction indicates either legislative approval of the construction or general dissatisfaction of insufficient strength to impel legislative action. Moss v. Gibbs, supra.
The legislature reacted to the Strong decision by adding the following language to article 1011e: `In computing the percentage of land area, the area of streets and alleys shall be included in the computation.' Acts 1985, 69th Leg., ch. 201, § 1, at 788, 789. The essence of this provision is now found in section211.006(e) of the Local Government Code. The amendment did not disturb the court's holding concerning a property owner's eligibility to sign zoning protests, and the statute has not been subsequently amended to avoid that construction. We can therefore treat these events as constituting either the legislature's tacit approval of Strong in that regard or as an indication of insufficient legislative discontent with that aspect of the case to warrant legislative response. In either event, Strong remains the most recent and relevant interpretation of section 211.006(d), and for that reason we conclude that the provision authorizes the submission of written protests to proposed changes in zoning classifications signed by the owners of any property within 200 feet of the area covered by the change, whether or not the properties of the protesting landowners share a boundary with or extend a distance of 200 feet from the area covered by the proposed change.
Your next question concerns the language added to article 1011e following Strong. It is prompted by the following statement in Attorney General Opinion JM-676 (1987):
 [T]he legislature clearly intended article 1011e(a) [now section 211.006(e) of the Local Government Code] to require that streets and alleys be included in computing either the area of lots or land included in the zoning change area, or the area of lots or land adjoining the proposed change area and extending 200 feet therefrom.
Your question is
 whether a city may allocate one-half of the area of any adjacent street or alley to a property eligible to participate in a zoning protest for purposes of determining who controls the streets and alleys with regard to such a protest.
We will assume for the purposes of this opinion that your question refers to property within a zoning protest area that abuts a street or alley. See Black's Law Dictionary 11 (5th ed. 1979) (`abut' means, inter alia, to touch, join at a border, or border on; `abutting' implies a closer proximity than `adjacent,' i.e., no intervening land).
The issue in Attorney General Opinion JM-676 was whether the amendment to article 1011e created a distinction between (1) streets and alleys held in fee simple by protesting landowners and dedicated for use as public easements and (2) streets and alleys owned by a city in fee simple. The concern was that the statute excluded privately owned streets and alleys from the computation of land area required by article 1011e. The opinion cited several authorities for the general rule that, unless otherwise declared in the conveyance, an owner of land abutting a street or alley which has been dedicated to the public holds the fee title to the center of the street or alley, subject to a public easement. See also 43 Tex. Jur.3d, Highways and Streets s 116. Municipalities may also acquire fee simple to streets and alleys, either through grant, purchase, or condemnation. See id. The purpose of the amendment to article 1011e, we noted, was to simplify the computation of the percentage of land area, a task made more difficult and costly as a result of the Strong case. We therefore concluded the legislature intended no further complications by excluding privately owned streets and alleys from the computation.
Your inquiry is answered by the language of subsections (d) and (e) of section 211.006 of the Local Government Code and by Attorney General Opinion JM-676. Subsection (d) is quite clear in its requirement that a written zoning protest be signed by the owners of at least 20 percent of either of the areas specified in the provision. Subsection (e) requires streets and alleys to be included in the computation of the percentage of land area under subsection (d). Subsection (d) thus authorizes the owners of streets and alleys in the protest area, including cities, to sign the zoning protest. See Geary, Davenport, and Minick, Annual Survey of Texas Law: Local Government Law, 40 Sw.L.J. 727, 732-733 (1986).
Attorney General Opinion JM-676 makes it clear that, as a general matter, an owner of land abutting a street or alley holds fee title to the center of the street or alley, unless otherwise provided in the conveyance to the landowner. By including the area of streets and alleys in the section 211.006(d) computation, the legislature expressed its intention not only to simplify the computation, but to give the owners of land supporting streets and alleys in the protest area greater any in the rezoning process. Accordingly, we conclude that section 211.006 of the Local Government Code authorizes a municipality to allocate the area of a street or alley in the manner you describe only when the adjacent landowner holds fee title to the center of the street or alley and only if the allocation conforms to the demarcation of the center line of the street or alley.
 SUMMARY
An owner of property within 200 feet of the area covered by a proposed change in zoning classification is entitled to sign a written zoning protest under section 211.006(d) of the Local Government Code, whether or not the property of the protesting landowner shares a boundary with the area covered by the proposed change or extends a distance of 200 feet from such area. Section 211.006 authorizes a municipality to allocate one-half of the area of a street or alley to abutting property included within the zoning protest area only if the owner of the abutting property holds fee title to the center of the street or alley and if the allocation conforms to the demarcation of the center line of the street or alley.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Steve Aragon Assistant Attorney General
[1] You ask about `standing' to make a zoning protest. It should be noted that section 211.006(d) does not grant standing in the sense that it precludes persons other than those listed in the statute from registering their objections to the proposed change in zoning classification. Rather, it provides that upon the submission of a written protest meeting the terms of the statute, the amendment to the zoning regulation must receive a favorable vote of three-fourths of all members of the legislative body of the municipality to become effective.