

# THE ATTORNEY GENERAL
## OF TEXAS

February 7, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable George Pierce                    Opinion No.  JM-1014
Chairman
Committee on Urban Affairs                 Re:  Procedures  for  pro-
Texas House of Representatives             testing a proposed  change
P. O. Box 2910                             in a zoning classification
Austin, Texas    78769                     (RQ-1472)

Dear Representative Pierce:

        You request our opinion concerning the proper interpre-
tation of sections 211.006 and 211.007 of the Local  Govern-
ment Code  as they  relate to  protests of  proposed  zoning
changes.  Section  211.007(c)  requires  written  notice  of
proposed zoning  changes  to  be sent  to  "each  owner,  as
indicated by the most recently approved municipal tax  roll,
of real property within  200 feet of  the property on  which
the change in [zoning] classification is proposed."  Section
211.006(d) provides the following:

> (d)  If a proposed change to a  regulation
> or boundary is  protested in accordance  with
> this subsection,  the  proposed  change  must
> receive, in order to take effect, the  affir-
> mative vote of at least three-fourths of  all
> members of the  governing body.  The  protest
> must be written and  signed by the owners  of
> at least 20 percent of either:
>
>> (1)  the  area  of  the  lots  or  land
>> covered by the proposed change; or
>
>> (2)  the  area  of  the  lots  or  land
>> immediately adjoining the area covered  by
>> the proposed change and extending 200 feet
>> from that area.  (Emphasis added.)

You ask  whether section  211.006(d)(2) includes  owners  of
property within 200 feet of the area covered by the proposed
zoning change  only  if  their  property  shares  a  boundary

with the property covered by the proposed change.[1] If it requires a common boundary, you also ask whether the adjacent property would have to extend 200 feet to be included in the protest area.

We conclude that section 211.006(d) of the Local Government Code includes an owner of property within 200 feet of the area covered by a proposed change in zoning classification, whether or not the property of the protesting landowner shares a boundary with the area covered by the proposed change or extends a distance of 200 feet from such area.

Prior to the enactment of the Local Government Code, the substance of section 211.006(d) was contained in article 1011e, V.T.C.S. Article 1011e was enacted by the 40th Legislature in 1927. Acts 1927, 40th Leg., ch. 283, § 5, at 424, 425. The predecessor of section 211.007(c), V.T.C.S. article 1011f, was also enacted in 1927. Id. § 6 at 425. As originally enacted, article 1011e provided for the submission of written protests to proposed zoning changes by

> the owners of 20 per cent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending 200 feet therefrom, or of those directly opposite thereto extending 200 feet from the street frontage of such opposite lots . . . .

Article 1011f required notice in terms virtually identical to section 211.007(c).

---

1. You ask about "standing" to make a zoning protest. It should be noted that section 211.006(d) does not grant standing in the sense that it precludes persons other than those listed in the statute from registering their objections to the proposed change in zoning classification. Rather, it provides that upon the submission of a written protest meeting the terms of the statute, the amendment to the zoning regulation must receive a favorable vote of three-fourths of all members of the legislative body of the municipality to become effective.

Article 1011e was amended in 1971 to provide that written protests may be submitted by the owners of 20 percent of either the area covered by the proposed zoning change or "the area of the lots or land immediately adjoining the same and extending 200 feet therefrom." Acts 1971, 62d Leg., ch. 942, § 1, at 2864. The amendment apparently was an attempt to simplify the language of the statute, but it is unclear whether the legislature intended to change the meaning of the statute. This language was preserved in section 211.006(d)(2) of the Local Government Code.

A careful reading of section 211.006(d)(2) reveals that the phrase "immediately adjoining . . . and extending 200 feet" describes the <u>area</u> from which landowners are permitted to sign a written zoning protest. The phrase does not describe the lots or land eligible to be included in the protest area. Thus, the appropriate reading of section 211.006(d)(2) is that it includes owners of lots or land within the area "immediately adjoining the area covered by the proposed change and extending 200 feet from" the area covered by the proposed change.

Our reading of this provision is supported by the only case to construe the language of what is now section 211.006(d)(2). In <u>Strong v. City of Grand Prairie</u>, 679 S.W.2d 767 (Tex. App. - Fort Worth 1984, no writ), the court read articles 1011e and 1011f in harmony, equating the class of landowners entitled to notice under article 1011f with the class of owners specified in article 1011e:

> The trial court also concluded as a matter of law that under art. 1011e those who are entitled to sign zoning change protests are the same as those entitled to notice by art. 1011f. Article 1011f requires written notice of all public hearings on proposed zoning changes before the city's zoning commission to owners 'of real property lying within 200 feet of the property on which the change in zoning classification is proposed . . . as the ownership appears on the last approved city tax roll.' TEX.REV.CIV.STAT.ANN. art. 1011f (Vernon Supp.1984). The trial court, also as a matter of law, concluded that in determining the base area (or denominator) in which the protest area (or numerator) is 20%, the area of streets is excluded.

> We hold that both of these conclusions  of law are correct, and that <u>a reading of  arts. 1011e and  1011f together,  reveals that  the intent  of  the  legislature  was  to  permit written protests of  proposed zoning  changes by the owners of 'real property' lying within 200 feet of the property on which the  zoning change is proposed, which ownership is deter- mined from the last approved city tax roll</u>.
>
> Since street right-of-way is not  included on the tax rolls, the area of the streets was properly  excluded.   (Emphasis  added  and citations omitted.)

679 S.W.2d  at 770.   The  court's construction  of  article 1011e places no  emphasis on  the conjunctive  "and" in  the phrase "immediately adjoining . . .  <u>and</u> extending 200  feet therefrom" and thus means that  an owner of property  within 200 feet of the area included in a proposed zoning change is entitled to sign a zoning  protest even though his  property does not  share a  boundary  with the  area covered  by  the proposed change or extend the entire 200 feet from the  area covered by the proposed change.

A statute is the creation of the legislature, and if an interpretation of a  statute by the  courts is  unacceptable to the legislature,  the  simple  remedy  is  to  amend  the statute. <u>Marmon v. Mustang  Aviation,  Inc.</u>, 430 S.W.2d  182 (Tex. 1968).   Thus, when  the legislature amends a  statute, the courts presume that the  legislature was fully aware  of the construction given the statute by the courts at the time of the amendment.   <u>See</u> <u>Warthan v.  Haynes</u>, 288 S.W.2d  481, 484 (Tex. 1956).   The failure of  the legislature to  amend the statute to avoid a  particular construction placed on  a provision of the  statute is  considered significant,  espe- cially if  the statute  has been  amended in  other  places. <u>See, e.g.</u>, <u>Moss v.  Gibbs</u>, 370 S.W.2d  452 (Tex. 1963); <u>San Antonio Union Junior College Dist. v. Daniel</u>, 206 S.W.2d 995 (Tex. 1948).   In such instances, the legislature's  inaction indicates either legislative approval of the construction or general dissatisfaction of insufficient  strength to  impel legislative action. <u>Moss v. Gibbs</u>, <u>supra</u>.

The legislature  reacted  to  the  <u>Strong</u>  decision  by adding  the  following  language  to  article  1011e:   "In computing the percentage of land  area, the area of  streets and alleys  shall be  included  in the  computation."   Acts

1985, 69th Leg., ch. 201, § 1, at 788, 789.   The essence   of this provision is   now found   in section   211.006(e) of   the Local Government Code.   The amendment did   not disturb   the court's holding concerning a property owner's eligibility to sign   zoning   protests,   and   the statute   has   not   been subsequently amended   to avoid   that construction.   We   can therefore treat   these   events as   constituting   either   the legislature's tacit approval of Strong in that regard or   as an indication   of   insufficient   legislative discontent   with that aspect of the case to warrant legislative response.   In either event, Strong   remains the most   recent and   relevant interpretation of section 211.006(d), and for that reason we conclude that   the provision   authorizes the   submission   of written   protests   to   proposed   changes   in   zoning classifications signed by the owners of any property   within 200 feet of the area covered   by the change, whether or   not the properties of the protesting landowners share a boundary with or extend a distance of 200 feet from the area   covered by the proposed change.

Your next   question   concerns   the   language   added   to article 1011e   following   Strong.   It is   prompted   by   the following   statement   in   Attorney   General   Opinion   JM-676 (1987):

> [T]he legislature   clearly   intended   article 1011e(a) [now section 211.006(e) of the Local Government Code] to require that streets   and alleys be   included in   computing either   the area of lots or   land included in the   zoning change area,   or the   area   of lots   or   land adjoining   the   proposed   change area   and extending 200 feet therefrom.

Your question is

> whether a city may   allocate one-half of   the area of   any adjacent   street or   alley to   a property eligible to participate in a   zoning protest   for   purposes of   determining   who controls the streets   and alleys with   regard to such a protest.

We will assume for   the purposes of   this opinion that   your question refers   to property   within a   zoning protest   area that abuts a street or alley.   See Black's Law Dictionary 11 (5th ed.   1979) ("abut"   means, inter alia,   to touch,   join

at a border, or border on; "abutting" implies a closer proximity than "adjacent," i.e., no intervening land).

The issue in Attorney General Opinion JM-676 was whether the amendment to article 1011e created a distinction between (1) streets and alleys held in fee simple by protesting landowners and dedicated for use as public easements and (2) streets and alleys owned by a city in fee simple. The concern was that the statute excluded privately owned streets and alleys from the computation of land area required by article 1011e. The opinion cited several authorities for the general rule that, unless otherwise declared in the conveyance, an owner of land abutting a street or alley which has been dedicated to the public holds the fee title to the center of the street or alley, subject to a public easement. See also 43 Tex. Jur. 3d, Highways and Streets § 116. Municipalities may also acquire fee simple to streets and alleys, either through grant, purchase, or condemnation. See id. The purpose of the amendment to article 1011e, we noted, was to simplify the computation of the percentage of land area, a task made more difficult and costly as a result of the Strong case. We therefore concluded the legislature intended no further complications by excluding privately owned streets and alleys from the computation.

Your inquiry is answered by the language of subsections (d) and (e) of section 211.006 of the Local Government Code and by Attorney General Opinion JM-676. Subsection (d) is quite clear in its requirement that a written zoning protest be signed by the owners of at least 20 percent of either of the areas specified in the provision. Subsection (e) requires streets and alleys to be included in the computation of the percentage of land area under subsection (d). Subsection (d) thus authorizes the owners of streets and alleys in the protest area, including cities, to sign the zoning protest. See Geary, Davenport, and Minick, Annual Survey of Texas Law: Local Government Law, 40 Sw.L.J. 727, 732-733 (1986).

Attorney General Opinion JM-676 makes it clear that, as a general matter, an owner of land abutting a street or alley holds fee title to the center of the street or alley, unless otherwise provided in the conveyance to the land-owner. By including the area of streets and alleys in the section 211.006(d) computation, the legislature expressed its intention not only to simplify the computation, but to give the owners of land supporting streets and alleys in

the protest area greater say in the rezoning process. Accordingly, we conclude that section 211.006 of the Local Government Code authorizes a municipality to allocate the area of a street or alley in the manner you describe only when the adjacent landowner holds fee title to the center of the street or alley and only if the allocation conforms to the demarcation of the center line of the street or alley.

### S U M M A R Y

An owner of property within 200 feet of the area covered by a proposed change in zoning classification is entitled to sign a written zoning protest under section 211.006(d) of the Local Government Code, whether or not the property of the protesting landowner shares a boundary with the area covered by the proposed change or extends a distance of 200 feet from such area. Section 211.006 authorizes a municipality to allocate one-half of the area of a street or alley to abutting property included within the zoning protest area only if the owner of the abutting property holds fee title to the center of the street or alley and if the allocation conforms to the demarcation of the center line of the street or alley.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General